Granovsky & Sundaresh PLLC
Benjamin Rudolph Delson
Alexander Granovsky
48 Wall Street / New York, NY 10005
delson@g-s-law.com / ag@g-s-law.com
(646) 524-6001
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MEGHAN PIPER JOHNSON, REBECCA PARDUE and RODENELLIE PLUVIOSE, on behalf of themselves and all other persons similarly situated, <br><br> *Plaintiffs,* <br><br> v. <br><br> BODY & POLE, INC. and KYRA JOHANNESEN, <br><br> *Defendants.* | CASE NO.: <br><br><br> **COLLECTIVE AND CLASS ACTION COMPLAINT with JURY DEMAND** |

Plaintiffs MEGHAN PIPER JOHNSON ("Johnson"), REBECCA PARDUE ("Pardue") and RODENELLIE PLUVIOSE ("Pluviose"), on behalf of themselves and all other persons similarly situated, upon personal knowledge as to themselves and upon information and belief as to other matters, by their attorneys, GRANOVSKY & SUNDARESH PLLC, bring this action against Defendants BODY & POLE, INC. ("BP") and KYRA JOHANNESEN ("Johannesen," and, together with BP, "Defendants") as an opt-in collective action for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et. seq., and supporting regulations ("FLSA"), and as an opt-out

Rule 23 class action for violations of the New York Labor Law, Art. 6, §§ 190 et. seq., and Art. 19, §§ 650 et. seq., and the supporting New York State Department of Labor regulations (collectively, "NYLL").

## NATURE OF ACTION

1.     Defendant Body & Pole Inc. is a boutique fitness company in Manhattan that offers classes in pole dancing and aerial fitness to the general public.  Its day-to-day operations are controlled by its founder, Defendant Kyra Johannesen.

2.     For years Defendants have recruited unpaid interns for a so-called "Work-Study Program."  Promising them an entrée into an exclusive profession, Defendants coax their "Work-Studies" into performing fifteen hours a week (or more) of unpaid janitorial, maintenance and clerical work.  Defendants get their interns to provide, for free, the labor that Defendants otherwise would have to pay $15 per hour to hire.

3.     Plaintiffs Meghan Piper Johnson, Rebecca Pardue and Rodenellie Pluviose were all employed in the Work-Study Program, as alleged in more detail below.  They each did hundreds of hours of janitorial, maintenance and clerical work for Defendants, but received no wages.

4.     Johnson, Pardue and Pluviose, on behalf of themselves and all other similarly situated employees and former employees of Defendants, now bring this lawsuit seeking recovery against Defendants for Defendants' violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et. seq. (the "FLSA"), and allege that they and all other current and former Work-Studies who elect to opt into this action pursuant to the collective action provisions of 29 U.S.C. § 216(b) are entitled to recover from

2

Defendants: (1) unpaid wages; (2) liquidated damages; and (3) interest and attorneys' fees and costs.

5.      Johnson, Pardue and Pluviose also bring this lawsuit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all other similarly situated employees and former employees of Defendants, seeking recovery against Defendants for Defendants' violation of New York Labor Law, Art. 6, §§ 190 et. seq., and Art. 19, §§ 650 et. seq., and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. § 142 (collectively, "NYLL"), and allege that they and all other Work-Studies are entitled to recover from Defendants: (1) unpaid wages; (2) liquidated damages; and (3) interest and attorneys' fees and costs.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. §§ 1331.

7.      This Court has subject matter jurisdiction over Plaintiffs' NYLL claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to the claims herein occurred in this District.

## THE PARTIES

### The Named Plaintiffs

9.      Plaintiffs MEGHAN PIPER JOHNSON (they/them/their), REBECCA PARDUE (she/her/hers) and RODENELLIE PLUVIOSE (she/her/hers) (together, "the Named Plaintiffs") were and are, at all relevant times, adult individuals living and working in the State of New York.

10.     The Named Plaintiffs bring this action as an opt-in collective action pursuant to FLSA on behalf of themselves and all other individuals employed by Defendants in New York as unpaid "Work-Study" interns within three years of the date this Complaint was filed (the "Collective Action Plaintiffs").

11.     The Named Plaintiffs also bring this action as an opt-out class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all other individuals employed by Defendant in New York as unpaid "Work-Study" interns within six years of the date this Complaint was filed (the "New York Rule 23 Class").

12.     The Named Plaintiffs, the Collective Action Plaintiffs, and the New York Rule 23 Class are current or former employees of Defendants within the meaning of the FLSA and the NYLL.

13.     The Named Plaintiffs and the Collective Action Plaintiffs worked in interstate commerce within the meaning of the FLSA.

14.     Written consent forms for the Named Plaintiffs to serve as party plaintiffs in this action are attached as Exhibits A, B and C to this Complaint.

**The Defendants**

15.     Defendant Body & Pole, Inc. ("BP") is an New York State for-profit corporation, with a principal place of business located at 115 W. 27th Street, New York, New York 10001.

16.     BP is a boutique fitness center.  Its website is www.bodyandpole.com.

17.     According to the BP website, BP offers "five studios, exclusive retail and merchandise, and weekly classes in Pole, Silk, Hoop, Flex & Core. With over 10,000 square feet, Body & Pole is the largest Pole and Aerial Dance studio in New York City, offering the experience of intimate classes with our world-renowned instructors. We work to support and empower the aerial dance community by fostering a safe, welcoming, and creative space for artists, athletes, and movement enthusiasts—both new and advanced—to explore, train, and grow."

18.     Defendant Kyra Johannesen is an adult individuals residing in the State of New York.

19.     Johannesen is a co-founder of BP.

20.     Upon information and belief, Johannesen now owns a controlling stake of BP.

21.     Johannesen exercises control over all BP policies and practices, including all scheduling and pay policies, and including all policies with respect to the BP Work-Study program.

22.     Johannesen has final authority for the day-to-day working conditions of the BP Work-Studies. For example and without limitation, Johannesen has ultimate authority to determine how individuals are accepted into the Work-Study program, how individuals are suspended or expelled from the Work-Study program, what hours of work are expected of Work-Studies, and what responsibilities and privileges Work-Studies will be assigned and afforded.

23.     Upon information and belief, at all times relevant to this Complaint, Defendants' annual revenue has been not less than $500,000.00.

24.     At all times relevant to this Complaint, Defendants were an "enterprise" as defined by the FLSA, and an "enterprise engaged in commerce" under the FLSA, and an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA.

25.     At all relevant times, Defendants were the employer of the Named Plaintiffs, the Collective Action Plaintiffs and the members of the New York Rule 23 Class within the meaning of the FLSA and NYLL.

26.     Defendants caused the violations set forth in this Complaint.

## STATEMENT OF FACTS

27.     Defendants operate a boutique fitness business in Manhattan that offers classes in pole dancing and other kinds of aerial fitness.

28.     Defendants charge members of the general public to attend their classes.

29.     Defendants' classes are not academic or vocational.  Rather, they are tailored mainly to provide clients with a satisfying workout in pole dancing and other kinds of aerial fitness.

30.     Defendants employ paid instructors and paid administrative staff.

## BODY & POLE HAS AN UNPAID "WORK-STUDY PROGRAM"

31.     Defendants also employ unpaid administrative staff through a "Work-Study Program."

32.     Defendants call the participants in that program their "Work-Studies."

33.     At any given time, Defendants employ about ten Work-Studies, sometimes more.

34.     Some Work-Studies have only a high school education, others have a college degree.  However, the overwhelming majority of Work-Studies are not enrolled in any degree-granting program while employed as Work-Studies.

35.     All Work-Studies are all subject to identical policies and practices.  There is only one location where Work-Studies work, there is only one reporting chain that Work-Studies report into, and there is only one formula for how many hours Work-Studies must work and what benefits they receive in compensation for their work.

36.     Work-Studies apply for employment in the Work-Study Program by submitting an application to BP.

37.     In order to gain admission to the Work-Study Program, applicants must attend an interview with BP's Work-Study Manager.

38.     If they are admitted to the Work-Study Program, Work-Studies are asked to sign a "commitment," promising to continue employment in the Work-Study program for a set period of time, typically twelve months.

39.     At the end of their commitment period, Defendants routinely offer their Work-Studies the chance to "re-commit," so that in practice the Work-Study Program has no definite duration.

40.     The commitment periods that Defendants ask Work-Studies to agree to are not tethered to any academic calendar.

41.     At the beginning of the Work-Study program, Defendants require the Work-Studies to attend a group training session, to learn about the structure of the Work-Study program.  Some of the parameters of the Work-Study program are also spelled out in part in a Work-Study Training Manual published by BP that is more than 150-pages long.

42.     Defendants require Work-Studies to work two shifts every week.  The shifts vary in length but typically last 7 or 7.5 hours.

43.     Upon information and belief, Defendants previously required their Work-Studies to work more hours per week.

44.     During a typical shift, Work-Studies have three kinds responsibilities: clerical, janitorial and maintenance.

45.     The clerical responsibilities of the Work-Studies are typical of any front-desk role at a gym or club:  signing clients in, ensuring that clients have signed waivers,

helping clients book or cancel classes, selling packages of classes to clients, and collecting payments from clients.

46.    The janitorial responsibilities of the Work-Studies include mopping studios, cleaning toilets and bathrooms and doing laundry.

47.    The maintenance responsibilities include setting up and taking down equipment and rigging before and after BP classes.  For example, Work-Studies are responsible for putting up and taking down hoops, putting up and taking down silks, putting up and taking down poles, putting up and taking down hammocks, and so on.

48.    The Work-Studies who work the first shift in the morning or the last shift at night have additional responsibilities for opening up and closing down the space.

49.    The Work-Studies are expected to perform their duties according to a specific schedule, for example, cleaning the toilets every X minutes, or setting up the rigging for class A at hour Y and class B at hour Z.

50.    The Work-Studies derive few or no professional benefits, as aspiring aerialists, from their 15 weekly hours of clerical, janitorial or maintenance work.

51.    Indeed, the Work-Studies often have no supervision during their 15 weekly hours of clerical, janitorial or maintenance work.  For example, there are typically no managers present to supervise the Work-Studies at all, during the first hours BP was open in the morning, or the last hours it was open at night.

52.    The Work-Studies are not paid any wages for their work.

53.    The Work-Studies do not receive wage notices or wage statements of any kind.

54.    The Work-Studies do, however, receive non-wage compensation for their work.

a. For example, in exchange for their work, Work-Studies are permitted to sign up for and attend an unlimited number of BP classes free of charge. However, just as with paying members, if a Work-Study signs up for a class and cancels within 24-hours of the class, BP charges the Work-Study a fee of $25.

b. For example, the Work-Studies are permitted to use any BP room that happens to be empty, free of charge. However, if a Work-Study wishes to reserve a room ahead of time, the Work-Study must pay a $30 fee.

c. For example, when Work-Studies work a third shift in a week, or fill in for a Work-Study who has arrived late or left early, they are compensated with 15 "BP Bucks" for every hour of their additional work. "BP Bucks" are a form of store credit which may be used to purchase products and services from BP. One "BP Buck" is worth one dollar.

55. The BP classes attended by Work-Studies are the same classes that are attended by members of the paying public.

56. There are no minimum number of classes per week that Work-Studies have to take to maintain their status as Work-Studies; Defendants have no objection to a Work-Study attending zero classes.

57. Indeed, if a Work-Study suffers an injury that prevents that Work-Study from attending classes, Defendants still expect the Work-Study to report to work for their shifts.

58.   Work-Studies who hold other jobs often only have the time to take about one or two BP classes per week.

59.   Defendants often discipline Work-Studies for allegedly poor performance or poor attitude.   Work-Studies can be disciplined for infractions as small as forgetting to do the laundry.

    a.  Discipline includes "suspending" Work-Studies.  A Work-Study who is suspended is expected to continue to work their shifts, but is not permitted to attend classes for free.  If a suspended Work-Study wishes to take classes during their suspension, they must pay the same rate as members of the paying public.

    b.  Discipline includes ending a Work-Study's ability to participate in the Work-Study program entirely.

60.   The Work-Studies are each assigned a "mentor," and are expected to meet with the Mentor periodically.

61.   The Work-Studies are also required to attend monthly "workshops."  The workshops are sometimes led by professionals in the dance and aerial fitness community, who discuss their careers with the Work-Studies.  Other workshops were led by a janitor, who trained the work studies on proper cleaning methods.  In general the workshops are of little professional value to the Work-Studies.

62.   Work-Studies are required to perform a final presentation during the last month of their Work-Study Program.

63.    Defendants call the Work-Studies' final presentations the Work-Study Showcase.

64.    Defendants promote the Work-Study Showcase as one of the signature benefits of participating in the Work-Study program, among other things because the Work-Study Showcase represents an opportunity for Work-Studies to have a professional videographer record their work.

65.    Defendants also host a Student Showcase. The Student Showcase is open to any BP member willing to pay the approximately $500 fee.   In exchange for that fee, BP will match the paying member with a "mentor" who will help that member put on a presentation, to be recorded by a professional videographer and to be presented during a ticketed event.

66.    There is no substantial difference between the experience that Work-Studies get by participating in the Work-Study Showcase and the experience that other members get by paying to participate in the Student Showcase.

67.    Defendants also offer a "pre-professional program" to paying members.   On information and belief, the "pre-professional program" costs thousands of dollars per year. Participants in the "pre-professional program" enjoy all the benefits of Work-Studies, including unlimited free classes and participation in a showcase. However, participants in the "pre-professional program" are not expected to work any shifts or perform any clerical, janitorial or maintenance duties.

68.    Defendants also offer a small "scholarship program," typically limited to one person at a time. Participants in the "scholarship program" enjoy all the benefits of

Work-Studies, including unlimited free classes and participation in a showcase. However, participants in the "scholarship program" are not expected to work any shifts or perform any clerical, janitorial or maintenance duties, and are not expected to pay Defendants. Typically, participants in the "scholarship program" are active students.

## THE NAMED PLAINTIFFS WERE ALL WORK-STUDIES

69.     Defendants employed Plaintiff Meghan Piper Johnson as a Work-Study from about August 2020 until about November 2021.

70.     Defendants employed Plaintiff Rebecca Pardue as a Work-Study from about June 2021 until about December 2021.

71.     Defendants employed Plaintiff Rodenellie Pluviose as a Work-Study from about December 2019 until about April 2021.

72.     The Named Plaintiffs were subject to the same policies and practices as all Work Studies, as outlined above.

73.     The Named Plaintiffs executed the same written "commitments" with BP as all Work Studies, as outlined above.

74.     During their employment, the Named Plaintiffs worked for Defendants an average of not less than fourteen hours per week.

75.     During their fourteen hours of work per week, the Named Plaintiffs performed work of a clerical, janitorial and maintenance nature for Defendants that was of little or no educational or vocational value to them, but that was of economic benefit to Defendants.

76.     Defendants did not pay the Named Plaintiffs for any of their work.

77.     Defendants did not give the Named Plaintiffs any wage notices or wages statements in connection with their work.

**THE NAMED PLAINTIFFS AND THE OTHER WORK-STUDIES WERE NOT THE PRIMARY BENEFICIARIES OF THE WORK-STUDY PROGRAM**

78.     The primary beneficiaries of the Work-Study Program are the Defendants, not the Named Plaintiffs or the other Work-Studies.

79.     Defendants, the Named Plaintiffs and the other Work-Studies all clearly understood that the Work-Studies would be compensated for their work (albeit not in the form of wages that comply with federal or New York State wage and hour laws).

    a.  The Work-Studies were allowed to attend unlimited BP classes free of charge in compensation for their labor.

    b.  A member of the general public pays about $40 per session to attend an aerial fitness class at BP.  Historically, a member of the general public could buy passes entitling them to twelve months' of essentially unlimited classes from BP for approximately $5100.

    c.  The Work-Studies were allowed to participate in a Work-Study Showcase free of charge in compensation for their labor.

    d.  A member of the general public must pay about $500 to participate in the Student Showcase.

80.     BP does not provide training similar to that which would be given by an educational institution.

a. The overwhelming majority of the time that the Named Plaintiffs and the other Work-Studies spent at BP was spent doing janitorial, maintenance and clerical work of little or no educational or vocational value.

b. Even the time that the Named Plaintiffs and the other Work-Studies spent taking aerial fitness classes at BP was and is not principally educational. The instructors employed by BP to conduct its classes typically treat those in attendance like clients at a gym looking for a good workout, not typically like students at a school looking to further their learning or advance their careers.

81. The Work-Study Program was not tied to the Named Plaintiffs' or the Work-Studies' formal education.

a. The Named Plaintiffs were not enrolled in school while they were Work-Studies.

b. Upon information and belief, the overwhelming majority of Work-Studies are not enrolled in any formal educational program while working for Defendants.

c. Upon information and belief, the overwhelming majority of Work-Studies received no academic credit for their work for Defendants.

82. The Work-Study Program is not tethered to any academic calendar.

a. Defendants' expectations of the Named Plaintiffs and the other Work-Studies were and are no different during months when schools are in session than during months when schools are not in session.

b. The cycle for admitting new Work-Studies does not follow any academic calendar, but rather is structured around the business needs of Defendants.

c. Upon information and belief, at least one Work-Study who was enrolled in a formal educational program was compelled to drop out of the Work-Study program before completing her "commitment" because Defendants could not accommodate her academic schedule.

83. The Work-Study Program is not limited in duration.

a. Defendants offered Johnson and Pluviose and other Work-Studies opportunities to "re-commit" to the Work-Study Program, extending its duration past the initial twelve months.

b. In practice, including through Defendants allowing Work-Studies to re-commit, the Work-Study Program is of indefinite length.

84. The labor performed by the Named Plaintiffs and the other Work-Studies displaced labor that Defendants would otherwise obtain on the free market.

a. The majority of the time that the Named Plaintiffs and the other Work-Studies spent at BP was spent doing clerical, janitorial and maintenance work for which scrupulous gyms and clubs must pay their employees the minimum wage.

b.  In about the summer of 2021, Defendants hired a number of "front desk managers," who were paid the minimum wage, and whose job responsibilities included selling packages to BP clients.  This was work that previously had been performed by Work-Studies.

c.  When Defendants needed to fill a gap in the schedule of shifts that the Work-Studies were expected to work, they would occasionally pay current or former Work-Studies in "BP Bucks" to fill in.

85.  Defendants, the Named Plaintiffs and the other Work-Studies clearly understand that, while Defendants do not automatically offer employment to Work-Studies at the end of their Work-Study Programs, the best way to obtain paid work from BP is to first serve as an unpaid Work-Study.

a.  The commitment signed by the Named Plaintiffs and the other Work-Studies reads in part: "Although the work-study program can be an excellent way to become an instructor or operations team member at Body & Pole, it comes with no guarantee of employment after the program is completed. However, consider this program as a one year job interview since the majority of our staff do come through our work-study program."

86.  The economic reality is that the Work-Study Program is structured exclusively to ensure a financial benefit for Defendants.  Any academic or vocational benefit to the Work-Studies is purely incidental.

a. Defendants obtain at least $11,250 in free labor per year, per Work-Study ($15 per hour x 14 hours per week x 50 weeks a year). Because Defendants obtain this labor not only without paying hourly wages to the Work-Studies, but also without paying any payroll taxes to New York State or the United States, and without providing any benefits to the Work Studies, including paid sick leave, unemployment insurance or worker's compensation benefits, the savings to Defendants far exceed $11,250 per year per Work-Study.

b. In exchange, Defendants compensate the Work-Studies with BP products and services that could be purchased by the general public for a few thousand dollars per year (admission to classes that were available to the general public for about $5100 per year, plus participation in a showcase that was available to the general public for about $500; similarly, participation in the "pre-professional program," which permits a BP member all the same privileges enjoyed by the Work-Studies, costs several thousand dollars per year).

## COLLECTIVE ACTION ALLEGATIONS

87.    Plaintiffs incorporate by reference the facts and allegations of the preceding paragraphs.

88.    All of Defendants' Work-Studies were subject to the same illegal pay practices that the Names Plaintiffs were subject to.

89. The Named Plaintiffs therefore seek to prosecute their FLSA claims as a collective action on behalf of all persons similarly situated, that is: all persons who are, or were formerly, employed by Defendants in New York, from three years before the filing of the Complaint in this case to the entry of judgment in this case (the "Collective Action Period"), as Work-Studies at Defendant BP (the "Collective Action Plaintiffs").

90. At all relevant times, the Named Plaintiffs and the Collective Action Plaintiffs have been subjected to wage and hour policies implemented by Defendants that culminated in a willful failure and refusal to pay the Named Plaintiffs and the Collective Action Plaintiffs the minimum wage.

91. Specifically, during the Collective Action Period, the Named Plaintiffs and the Collective Action Plaintiffs were employed by Defendants, but Defendants willfully violated the rights of the Named Plaintiffs and the Collective Action Plaintiffs under the FLSA by not paying the Named Plaintiffs and the Collective Action Plaintiffs the federal or New York City minimum wage for all hours worked.

92. The Collective Action Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the Collective Action Plaintiffs via first class mail to the last address known to Defendants, and via text to the last known cell phone number known to Defendants.

93. The collective action is so numerous that joinder of all Plaintiffs is impracticable. Although the precise number of such persons is not yet known to

Plaintiffs, upon information and belief there are between thirty and fifty Work-Studies who worked without pay for Defendants during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

94. The Named Plaintiffs will fairly and adequately protect the interests of the Collective Action Plaintiffs: the Named Plaintiffs have retained counsel that is experienced and competent in the fields of employment law and collective action litigation. The Named Plaintiffs have no interests that are contrary to or in conflict with the Collective Action Plaintiffs.

95. The Collective Action Plaintiffs are similarly situated to the Named Plaintiffs in that, upon information and belief, Defendants imposed uniform terms and conditions on all of their Work-Studies, including as described above in the section titled "The Named Plaintiffs and the Other Work-Studies Were Not the Primary Beneficiaries of the Work-Study Program."

96. Upon information and belief, these practices by Defendants were done willfully to avoid paying the actual wages due to Defendants' employees.

97. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all Collective Action Plaintiffs is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Plaintiffs might be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the

collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

98. Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual Plaintiffs because Defendants acted on grounds generally applicable to all Plaintiffs. Among the common questions of law and fact common to all Plaintiffs are:

a. Whether the Named Plaintiffs and the Collective Action Plaintiffs were or were not the primary beneficiaries of the Work-Study Program;

b. Whether Defendants "employed" the Named Plaintiffs and the Collective Action Plaintiffs within the meaning of the FLSA;

c. Whether Defendants failed to keep true and accurate records of hours worked by the Named Plaintiffs and the Collective Action Plaintiffs;

d. What proof of hours worked is sufficient, where the employer fails in its duty to maintain records of such hours;

e. Whether Defendants failed to pay the Named Plaintiffs and the Collective Action Plaintiffs for all hours of work;

f. Whether Defendants' violations of the FLSA are willful as that term is used in the context of that statute;

g. Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interests, costs and disbursements and attorneys' fees.

99. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

100. The Named Plaintiffs have consented in writing to be a part of this action pursuant to 29 U.S.C. §216(b). Signed consent forms are attached as Exhibits A, B and C.

## NEW YORK CLASS ACTION ALLEGATIONS

101. Plaintiffs incorporate by reference the facts and allegations of the preceding paragraphs.

102. Defendants imposed uniform terms and conditions on all of their Work-Studies, including as described above in the section titled "The Named Plaintiffs and the Other Work-Studies Were Not the Primary Beneficiaries of the Work-Study Program." All of the Work-Studies were subject to the same illegal pay practices that the Named Plaintiffs were subject to.

103. The Named Plaintiffs therefore seek to prosecute their NYLL claims both individually and as a class action pursuant to Rule 23 (a) and (b) of the Federal Rules of Civil Procedure on behalf of all similarly situated individuals in the State of New York, that is: all persons who are, or were formerly, employed by Defendants in New York, from six years before the filing of the Complaint in this case to the entry of judgment in this case (the "Class Period"), as Work-Studies at Defendant BP (the "New York Rule 23 Class").

104. The members of the proposed New York Rule 23 Class are so numerous that joinder of all members is impractical and inefficient such that the requirements of

Rule 23(a)(1) are met. Although the precise number of such persons is not yet known to Plaintiffs, upon information and belief there are between sixty and one hundred members of the New York Rule 23 Class.

105.    There are common questions of law and fact affecting the member of the New York Rule 23 Class, including:

    a.  Whether the Named Plaintiffs and the members of the New York Rule 23 Class were or were not the primary beneficiaries of the Work-Study Program;

    b.  Whether Defendants "employed" the Named Plaintiffs and the members of the New York Rule 23 Class within the meaning of the NYLL;

    c.  Whether Defendants failed to keep true and accurate records of hours worked by the Named Plaintiffs and the members of the New York Rule 23 Class;

    d.  What proof of hours worked is sufficient, where the employer fails in its duty to maintain records of such hours;

    e.  Whether Defendants failed to pay the Named Plaintiffs and the members of the New York Rule 23 Class for all hours of work;

    f.  Whether Defendants' violations of NYLL are willful as that term is used in the context of that statutes;

    g.  Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interests, costs and disbursements and attorneys' fees.

106. The requirements of Rule 23(a)(2) are met.

107. The Named Plaintiffs claims are typical of the claims of the New York Rule 23 Class as a whole. The Named Plaintiffs and the New York Rule 23 Class have suffered harm due to Defendants' failure to pay them the New York City minimum wage for all hours worked. The requirements of Rule 23(a)(3) are met.

108. The Named Plaintiffs will fairly and adequately protect the interests of the New York Rule 23 Class: the Named Plaintiffs have retained counsel that is experienced and competent in the fields of employment law and class action litigation. The Named Plaintiffs have no interests that are contrary to or in conflict with the New York Rule 23 Class. The requirements of Rule 23(a)(4) are met.

109. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members of the New York Rule 23 Class is impracticable. Furthermore, inasmuch as the damages suffered by individual members of the New York Rule 23 Class might be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the New York Rule 23 Class to individually seek redress for the wrongs done to them. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices. Certification under Rule 23(b)(3) is appropriate.

110. There will be no difficulty in the management of this action as a class action.

111. Plaintiff intends to send notice to all members of the proposed New York Rule 23 Class to the extent required by Rule 23.

## COUNT ONE

## On Behalf of the Named Plaintiffs and the Collective Action Plaintiffs Under the FLSA

112.   The Named Plaintiffs, on behalf of themselves and the Collective Action Plaintiffs, repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

113.   The Named Plaintiffs and the Collective Action Plaintiffs were not paid the federal minimum wage, or the New York City minimum wage, for their work for Defendants.

114.   As a result of Defendants' willful failure to pay the Named Plaintiffs and each of the Collective Action Plaintiffs wages, Defendants violated the FLSA, 29 U.S.C. §201 et. seq..

115.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. §255(a).

116.   Due to Defendants' FLSA violations, the Named Plaintiffs and the Collective Action Plaintiffs are entitled to recover from Defendants unpaid compensation in an amount to be determined at trial, and an additional equal amount as liquidated damages, plus interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## COUNT TWO

### On Behalf of the Named Plaintiffs and the New York Rule 23 Class
### Under the NYLL

117.    The Named Plaintiffs, on behalf of themselves and the New York Rule 23 Class, repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

118.    The Named Plaintiffs and the New York Rule 23 Class were not paid the New York City minimum wage for their work for Defendants.

119.    As a result of Defendants' failure to pay the Named Plaintiffs and the members of the New York Rule 23 Class wages, Defendants violated the NYLL.

120.    The foregoing conduct, as alleged, constitutes a willful violation of the law, within the meaning of the NYLL.

121.    Due to Defendants' NYLL violations, the Named Plaintiffs and the members of the New York Rule 23 Class are entitled to recover from Defendants unpaid compensation in an amount to be determined at trial, plus liquidated damages as permitted by NYLL, plus interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to NYLL.

### COUNT THREE

### On Behalf of the Named Plaintiffs

122.    The Named Plaintiffs repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

123.    Defendants employed the Named Plaintiffs in New York State.

124. Defendants did not provide the Named Plaintiffs with wage notices or wage statements as required by NYLL § 195.

125. Pursuant to NYLL §§ 198.1-b & 1-d, the Named Plaintiffs are entitled to statutory penalties of $10,000 each, plus reasonable attorneys' fees, and costs and disbursements of this action.

## PRAYER FOR RELIEF

**WHEREFORE**, the Named Plaintiffs, on behalf of themselves and the Collective Action Plaintiffs, respectfully request that this Court grant the following relief:

(a) Designation of this action as a collective action on behalf of the Collective Action Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b), and appointing the Named Plaintiffs and their counsel to represent the Collective Action Plaintiffs;

(b) Award the Named Plaintiffs and the Collective Action Plaintiffs compensatory damages for unpaid wages due to the Named Plaintiffs and the Collective Action Plaintiffs under the FLSA;

(c) Award the Named Plaintiffs and the Collective Action Plaintiffs liquidated damages as a result of Defendant's willful failure to pay wages under the FLSA;

(d)     Award the Named Plaintiffs and the Collective Action Plaintiffs interest (including pre- and post-judgment interest);

(e)     Award the Named Plaintiffs and the Collective Action Plaintiffs their costs of this action, including reasonable attorneys' fees; and

(f)     Such other and further relief as to this Court appears necessary and proper.

**AND WHEREFORE**, the Named Plaintiffs, on behalf of themselves and on behalf of the New York Rule 23 Class,  respectfully request that this Court grant the following relief:

(a)     Certify this action as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the New York Rule 23 Class;

(b)     Appoint the Named Plaintiffs as Class Representatives and appoint their counsel as Class Counsel;

(c)     Award the Named Plaintiffs and the members of the New York Rule 23 Class compensatory damages for unpaid wages due to the Named Plaintiffs and the Collective Action Plaintiffs under the NYLL;

(d)     Award the Named Plaintiffs and the members of the New York Rule 23 Class liquidated damages as a result of Defendants' willful failure to pay wages under the NYLL;

(e)     Award the Named Plaintiffs and the members of the New York Rule 23 Class interest (including pre- and post-judgment interest);

(f)     Award the Named Plaintiffs and the members of the New York Rule 23 Class their costs of this action, including reasonable attorneys' fees; and

(g)     Such other and further relief as to this Court appears necessary and proper.

**AND WHEREFORE**, the Named Plaintiffs, on behalf of themselves, respectfully request that this Court award the Named Plaintiffs $10,000 each pursuant to NYLL §§ 198.1-b & 1-d, as well as their costs of this action, including reasonable attorneys' fees.

## DEMAND FOR JURY TRIAL

Plaintiffs, by and through their undersigned counsel, hereby demand a jury trial on all causes of actions and claims for which they have a right to a jury trial.

Dated:     January 29, 2022

Respectfully Submitted,

GRANOVSKY & SUNDARESH PLLC

By: _____

BENJAMIN R. DELSON
ALEXANDER GRANOVSKY
GRANOVSKY & SUNDARESH PLLC
48 Wall Street / New York, NY 10005
delson@g-s-law.com / ag@g-s-law.com
(646) 524-6001
*Attorneys for Plaintiffs*