## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MEGHAN PIPER JOHNSON, REBECCA
PARDUE and RODENELLIE PLUVIOSE, on
behalf of themselves and all other persons
similarly situated,

    *Plaintiffs,*

  v.

BODY & POLE, INC. and KYRA
JOHANNESEN,

    *Defendants.*

Case No. 22-CV-00857 (VSB)

Judge Vernon S. Broderick

## MEMORANDUM OF LAW IN SUPPORT OF THE UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED CLASS AND COLLECTIVE ACTION SETTLEMENT

GRANOVSKY & SUNDARESH PLLC
Benjamin Rudolph Delson, Esq.
Alexander Granovsky, Esq.
48 Wall Street / New York, NY 10005
delson@g-s-law.com
ag@g-s-law.com
(646) 524-6001

Attorneys for Plaintiffs

# TABLE OF CONENTS

*PRELIMINARY STATEMENT*..............................................................................*1*

*FACTUAL AND PROCEDURAL BACKGROUND*.................................................*2*

   I.   Procedural History...............................................................................2

   II.   Overview of Investigation and Discovery .........................................3

*SUMMARY OF THE SETTLEMENT TERMS* ....................................................*4*

   I.   Eligible Employees ............................................................................4

   II.   The Settlement Amount....................................................................4

   III.   Releases.............................................................................................5

   IV.   Notice ................................................................................................5

   V.   Delivery of Settlement Checks.........................................................6

   VI.   Fees and Costs ..................................................................................6

*CLASS ACTION SETTLEMENT PROCEDURE*....................................................*6*

*ARGUMENT* ....................................................................................................*7*

   I.   Preliminary Approval of the Settlement Is Appropriate.......................7

      A.   Under *Grinnell*, the Settlement is Fair, Reasonable, and Adequate .......................................................................................8

         1.   Litigation Would be Complex & Expensive (*Grinnell* Factor 1)  8

         2.   The Reaction of the Class (*Grinnell* Factor 2)...........................9

         3.   Discovery Has Advanced Far Enough to Allow the Parties and the Court to Appraise the Case (*Grinnell* Factor 3) ..............9

         4.   The Risks of Establishing Liability and Damages (*Grinnell* Factors 4 and 5) .....................................................................10

         5.   Establishing a Class and Maintaining it Through Trial Would Not Be Simple (*Grinnell* Factor 6) .......................................10

         6.   Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7) .................................................................11

         7.   The Settlement Amount is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ................................................12

      B.   Under Amended Rule 23(e), Preliminary Approval is Appropriate .................................................................................13

   II.   Preliminary Approval of the Rule 23 Class Is Appropriate.............18

      A.   Numerosity.................................................................................19

B. Commonality ........................................................19

C. Typicality ..........................................................20

D. Adequacy of the Named Plaintiff as Class Representative........21

E. Certification is Proper Under Rule 23(b)(3) ..................22

    1. Common Questions Predominate ................................22

III.    Approval of FLSA Collective Settlement Is Appropriate .................24

IV.    Plaintiff's Counsel Should Be Appointed Class Counsel...................26

V.    The Proposed Notice Is Appropriate....................................27

*CONCLUSION* ....................................................................*28*

# TABLE OF AUTHORITIES

## CASES

*Ahlquist v. Bimbo Foods Bakeries Distrib. Inc.,* No. 12-cv-01272, 2013 U.S. Dist. LEXIS 7660 (D. Conn., Jan. 18, 2013) ................................21, 23

*Baten v. Mr. Kabob Rest. Inc.,* 16-CV-9559, 2019 U.S. Dist. LEXIS 234811 ....................................................................................................17

*Buchanan v. Pay-O-Matic Check Cashing Corp.,* No. 18-CV-855, 2020 U.S. Dist. LEXIS 188658 (E.D.N.Y., Oct. 8, 2020), *adopted by* 2021 U.S. Dist. LEXIS 35030..........................................................passim

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974)..........................passim

*Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473 (2d Cir. 1995).....................19

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.,* 502 F.3d 91 (2d Cir. 2007)..................................................................................22

*County of Suffolk v. Long Island Lighting Co.,* 710 F. Supp. 1422 (E.D.N.Y. 1989), *aff'd in relevant part,* 907 F.2d 1295 ...........................19

*Denney v. Deutsche Bank AG,* 443 F.3d 253 (2d Cir. 2006)......................................21

*Faroque v. Park West Exec. Servs.,* No. 15 CV 6868, 2020 U.S. Dist. LEXIS 15839 (E.D.N.Y., Jan. 29, 2020) .....................................................11

*Fisher v. SD Prot. Inc.,* 948 F.3d 593 (2d Cir. 2019).................................................25

*Frank v. Eastman Kodak Co.,* 228 F.R.D. 174 (W.D.N.Y. 2005).............12, 19, 20, 24

*Gaspar v. Pers. Touch Moving, Inc.,* No. 13-CV-8187, 2015 U.S. Dist. LEXIS 162243 (S.D.N.Y. Dec. 3, 2015) .....................................................16

*Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147 (1982) .......................................19

*Glatt v. Fox Searchlight Pictures, Inc.,* 811 F. 3d 528 (2nd Cir. 2016) ............passim

*Gonzalez v. PB Hudson LLC,* No. 17-CV-2010, 2018 U.S. Dist. LEXIS 242066 (S.D.N.Y. Oct. 10, 2018) and 2019 U.S. Dist. LEXIS 238839 (S.D.N.Y. April 4, 2019) .................................................................24

*Gonzalez v. PB Hudson LLC,* No. 17-CV-2010, 2019 U.S. Dist. LEXIS 238839 (April 4, 2019)...............................................................................17

*Guaman v. Ajna-Bar NYC,* No. 12-Civ.-2987, 2013 U.S. Dist. LEXIS 16206 (S.D.N.Y. Feb. 5, 2013)......................................................................24

*Hall v. Prosource Techs., LLC,* No, 14-CV-2502, 2016 U.S. Dist. LEXIS 53791 (E.D.N.Y., April 11, 2016) ..............................................................16

*Hill v. City. of Montgomery,* No. 14-cv-00933, 2021 U.S. Dist. LEXIS 103183 (N.D.N.Y., June 2, 2021) ...............................................................7

*Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363 (S.D.N.Y. 2007) ...........................................................................................................23

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ..........................................................8, 9, 10, 12

*In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) ..................................................................................................22

*Joel A. v. Guiliani*, 218 F.3d 132 (2d Cir. 2000)................................................6

*Kirby v. FIC Rest., Inc.*, No, 19-CV-1306, 2020 U.S. Dist. LEXIS 178109 (N.D.N.Y., Sept. 28, 2020)..............................................11

*Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362 (S.D.N.Y. 2013) ..................................................................................................11

*Marisol A. v. Guiliani*, 126 F.3d 372 (2d Cir. 1997)....................................20

*Marriott v. County of Montgomery*, 227 F.R.D. 159 (N.D.N.Y. 2005) ......................22

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972) ............................................12

*Romero v. Westbury Jeep Chrysler Dodge, Inc.*, No. 15-cv-4145, 2016 U.S. Dist. LEXIS 46462 (E.D.N.Y. April 6, 2016)....................................16

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986)................................22

*Torres v. Gristede's Operating Corp.*, No. 04-cv- 3316, 2010 U.S. Dist. LEXIS 75362 ...................................................................................7

*Toure v. Cent. Parking Sys.*, No. 05-cv-5237, 2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sep. 28, 2007)................................................21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005)................6, 14

*Wolinsky v. Scholastic Inc.,* 900 F. Supp. 2d 332 (S.D.N.Y. 2012) ............................25

## STATUTES

Fair Labor Standards Act, 29 U.S.C. § 201.........................................passim

## PRELIMINARY STATEMENT

The parties have reached a settlement of all claims alleged in the Complaint. The settlement comes after substantial factual investigations and extensive settlement negotiations, including both mediation before a court-appointed mediator and nearly six months of settlement discussions between experienced counsel.

The proposed settlement resolves all individual claims asserted by Meghan Piper Johnson, Rebecca Pardue and Rodenellie Pluviose (the "Named Plaintiffs") against Defendants Body & Pole, Inc. and its owner Defendant Kyra Johannesen (together, "Defendants"). The proposed settlement also resolves all claims asserted by the nineteen additional individuals who opted to become party plaintiffs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.*, ("FLSA") (the "Opt-Ins").

Further, the proposed settlement provides for the certification of a collective action (the "Collective Action") under Section 216(b) of the FLSA, of all individuals who were Work-Studies at Defendant Body & Pole at any time from February 1, 2019 through the date of the Court's Order granting Preliminary Approval of the Settlement. The proposed settlement also provides for the certification of a settlement class (the "Class") consisting of all individuals who were Work-Studies at Defendant Body & Pole, at any time from February 1, 2016 through the date of the Court's Order granting Preliminary Approval of the Settlement.

Through this motion, Plaintiffs respectfully request (and Defendants do not oppose) that the Court: (1) grant preliminary approval of the Settlement Agreement and Release ("Settlement Agreement" or "Settlement") attached as Exhibit 1 to the

Declaration of Benjamin Rudolph Delson in Support of the Unopposed Motion for Preliminary Approval of the Proposed Class And Collective Action Settlement ("Delson Decl."); (2) provisionally certify the Class and the Collective Action in connection with the settlement process; (3) approve the proposed notices to the Class and the Collective Action; (4) appoint the Named Plaintiffs as Class Representatives, Granovsky & Sundaresh PLLC as Class Counsel, and Arden Claims Service LLC as Settlement Administrator; and (5) instruct the parties to appear before this Court for a Final Approval and Fairness Hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Procedural History

The Complaint in this lawsuit was filed on February 1, 2022. The gravamen of the Complaint is that all three Named Plaintiffs were so-called Work-Studies at Body & Pole. During their tenure as Work-Studies, the Named Plaintiffs claim to have performed approximately 15 hours per week of work for Defendants—largely janitorial, secretarial and maintenance tasks—for which they had received no wages. The Complaint alleged that this arrangement violated both the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Delson Decl. ¶¶9-12 & Ex. 5.

The Complaint proposed to bring a Collective Action under Rule 216(b) of the FLSA, as well as a Class Action under Rule 23 of the Federal Rules of Civil Procedure alleging violations of NYLL, on behalf of all Work-Studies employed by Defendants in the three- and six-year periods prior to the filing of the Complaint. Delson Decl. ¶13 & Ex. 5, ¶¶4-5.

The Defendants answered on May 6, denying all liability, arguing that their Work-Study Program was a valid unpaid internship or vocational training program under *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F. 3d 528 (2nd Cir. 2016) and its progeny. Delson Decl. ¶19 & Ex. 6.

The matter was referred to the SDNY Mediation Office for mediation, which was held before Mr. Roger Briton on May 31, but which did not result in settlement. However, settlement discussions continued in fits and starts through the summer, and the parties reached a settlement in principal on September 16. Delson Decl. ¶¶ 20-24, 32-40.

## II.     Overview of Investigation and Discovery

This case is unusual in that there are comparatively few disputed facts. The parties agree, in significant part, about the terms and conditions of the Defendants' Work-Study Program, the identity of the Work-Studies, the hours worked by those Work-Studies, and the benefits they received in exchange. Plaintiffs anticipated that the case would turn on a single legal question: whether the Work-Study Program was or was not a valid unpaid internship or vocational training program under *Glatt* and its progeny. Delson Decl. ¶¶25-26.

Nevertheless, Plaintiffs spent substantial time developing witnesses who could testify about the terms and conditions of the Work-Study Program, and constructing estimates of the total unpaid wages owed to the Work-Studies if their legal theory were to prevail. Plaintiffs shared these early estimates with counsel for the Defendants, who indicated early on that the Defendants were unlikely to be able to

afford to pay even a small fraction of the alleged liability calculated by Plaintiffs. Indeed, Defendants claimed that they likely could not afford even to defend the suit to completion. Plaintiffs therefore conducted research regarding Defendants' financial condition, including obtaining and reviewing six years of Defendants' tax returns. Delson Decl. ¶¶27-31.

### SUMMARY OF THE SETTLEMENT TERMS

## I.      Eligible Employees

All individuals who acted as Work-Studies for the Defendants from February 1, 2016 to the present (the "Class Members") will be eligible to participate in the Class Action settlement. This contemplated settlement also encompasses a Collective Action under FLSA Section 216(b), which resolves all claims under the FLSA for individuals who worked since February 1, 2019. Delson Decl. ¶42 & Ex. 1 at ¶¶1.4, 3.1, 4.1.

## II.      The Settlement Amount

The Defendants have agreed to pay a total gross settlement amount of one hundred twenty thousand dollars ($120,000.00) (the "Gross Settlement Amount") to settle this action. The cost of settlement administration will be paid out of the Gross Settlement Amount, leaving a total (the "Net Settlement Amount") that is anticipated to be $108,000. Two-thirds of the Net Settlement Amount will be distributed to the plaintiffs (including modest service awards for the Named Plaintiffs); one-third is allocated as Plaintiffs' attorneys fees. Delson Decl. ¶43; Ex. 1 at ¶¶1.27 + 3.

## III.     Releases

The settlement contemplates two tiers of releases: (1) the Named Plaintiffs will sign general releases of claims against the Defendants; (2) members of the Class who do not affirmatively opt out of the settlement (including members of the Collective Action and the 19 Opt-Ins) will release all claims against the Defendants under New York Labor Law ("NYLL") for violations of wage and hour laws, just as members of the Collective Action who endorse their settlement checks will release all claims under the FLSA for violations of wage and hour laws.  Delson Decl. ¶¶52-54, Ex. 1 ¶4.1.

## IV.     Notice

The settlement provides for a notice (the "Class Notice") to be issued to all potential members of Class, including the Opt-Ins and the members of the Collective Action, providing the Class Members the opportunity to opt out of the settlement. Ex. 1, ¶2.5. The proposed notices are attached as Exhibits 2 and 3, and include proposed text and email notices.

The settlement proposes that, within 30 calendar days of the date of entry of an order granting preliminary approval to the settlement, the Settlement Administrator will mail the two notices to Class Members: one via First Class mail, one via email.  Ex. 1, ¶2.5.   As to any Class Members for whom the notices are returned as undeliverable, the Settlement Administrator shall send a text message, as included in the Class Notice, to each such Class Member whose telephone number is known to Defendants.  Ex. 1 at ¶2.5.

## V.        Delivery of Settlement Checks

The Settlement contemplates the Defendants funding the settlement over 36 months, with three annual payments of $40,000.  In order to reduce administrative costs, the Settlement contemplates each Class Member receiving one check in order of seniority, with the earliest Work-Studies receiving payment first (in 2023), and the most recent Work-Studies receiving payments last (in 2025).  The Settlement also prioritizes payments to the Named Plaintiffs and the Opt-Ins.  Delson Decl. ¶¶49-50, Ex. 1 at ¶3.1(E).

## VI.        Fees and Costs

Consistent with the Settlement, Class Counsel will move this Court to approve attorney's fees equal to 33% of the Net Settlement Amount (an amount equal to roughly 30% of the Gross Settlement Amount).  Ex. 1 at ¶¶ 3.2.  As discussed below, these fees are in line with those sought and approved in other cases in this Circuit. But the Court need not rule on fees and costs now; pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Class Counsel will file a motion for approval of attorneys' fees and reimbursement of expenses along with Plaintiff's Motion for Final Approval of the Settlement, or at such time as the Court prefers.

## CLASS ACTION SETTLEMENT PROCEDURE

The law favors the settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).  The approval of a proposed class action settlement is a matter of discretion for the trial court. *Joel A. v. Guiliani*, 218 F.3d 132, 139 (2d Cir. 2000).  And, "[i]n exercising this discretion, courts should give

proper deference to the private consensual decision of the parties." *Torres v. Gristede's Operating Corp.*, No. 04-cv- 3316, 2010 U.S. Dist. LEXIS 75362, at *10 (S.D.N.Y. June 1, 2010) (citation and quotation omitted.)

The settlement of class action lawsuits typically includes three distinct stages:

> 1. Preliminary Approval: The parties submit a proposed settlement to the Court in connection with a written motion for preliminary approval.
>
> 2. Notice: The parties mail notice of the proposed settlement to all affected Class Members; and
>
> 3. Final Settlement Approval Hearing: The Court holds a hearing at which Class Members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Cf.* Fed. R. Civ. P. 23(e); *Hill v. City. of Montgomery*, No. 14-cv-00933, 2021 U.S. Dist. LEXIS 103183, at *2-3 (N.D.N.Y., June 2, 2021). This process safeguards Class Members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.

With this motion, the Named Plaintiffs request that the Court take the first step: granting preliminary approval of the Settlement, approving the proposed Notice materials, and authorizing the parties to send notice to the Class.

## **ARGUMENT**

## I.     **Preliminary Approval of the Settlement Is Appropriate**

Preliminary approval of a class settlement "requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Torres*, 2010 U.S. Dist. LEXIS 75362,

at *10-11 (citations and quotations omitted).  That initial evaluation is guided by the 2018 revisions to Rule 23(e), and by the traditional nine factors in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

We will first explain why preliminary approval of the settlement is appropriate under the *Grinnell* factors, and then explain why the criteria of Rule 23(e)(2) are met.  *Cf.  Buchanan v. Pay-O-Matic Check Cashing Corp.*, No. 18-CV-855, 2020 U.S. Dist. LEXIS 188658, at *14-*16 (E.D.N.Y., Oct. 8, 2020) (discussing standard), *adopted by* 2021 U.S. Dist. LEXIS 35030.

## A.  Under *Grinnell*, the Settlement is Fair, Reasonable, and Adequate

### 1.  Litigation Would be Complex & Expensive (*Grinnell* Factor 1)

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

If this matter were to proceed, the parties would likely invest heavily in developing evidence for and briefing summary judgment motions, seeking to prevail on the question of whether the Work-Study Program was or was not a valid unpaid internship or vocational training program under *Glatt* and its progeny.  Because that question would be dispositive, appeals to the Second Circuit would be likely, no matter the outcome.  If summary judgment were denied to both parties and the matter were to proceed to trial, a jury would be required to decide, under *Glatt,* the question of who was the primary beneficiary of this Work-Study relationship, the Work-

Study, or Body & Pole?  Such a trial would require the jury to hear testimony from perhaps a dozen Work-Studies on the nature of the Work-Study Program, and would likely consume at least a full week of the Court's time.  Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

### 2.      The Reaction of the Class (*Grinnell* Factor 2)

Notice of the settlement and its details has not yet issued to the Class as a whole, and so, at present, *Grinnell* Factor 2 does not weigh heavily for or against preliminary approval.  However, the Named Plaintiffs were intimately involved in negotiating the settlement, and all three support it; further, before agreeing to the settlement, the Named Plaintiffs, through counsel, communicated the basic framework of the proposed settlement to the nineteen Opt-Ins, and the Opt-Ins have generally expressed support.

### 3.      Discovery Has Advanced Far Enough to Allow the Parties and the Court to Appraise the Case (*Grinnell* Factor 3)

There is no threshold that discovery must reach in order to satisfy this inquiry. "[I]t is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make an appraisal" of the settlement.  *In re Austrian*, 80 F. Supp. 2d at 176 (cleaned up).

The parties' discovery here meets this standard.  Here, Plaintiffs' counsel conducted interviews with about twenty-five former Work-Studies—more than one-fifth of the Class, Delson Decl. ¶¶27, 31—gathering a robust understanding of what the Plaintiffs would be able to prove about Defendants' Work-Study Program at trial. Plaintiffs' counsel also obtained, during settlement discussions, records both of the

Work-Studies' tenures, and of Defendants' financial position, allowing Plaintiff's counsel to accurately estimate Defendants' maximum liability, and to reach meaningful conclusions about Defendants' inability to withstand a greater judgment. Therefore, the third *Grinnell* factor weighs in favor of preliminary approval.

**4.      The Risks of Establishing Liability and Damages (*Grinnell* Factors 4 and 5)**

In weighing the risks of establishing liability, class treatment, and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (citations and quotations omitted).

Plaintiffs are unaware of any published decision, in any forum nationwide, addressing the legality, under FLSA or NYLL, of a program analogous to Defendants' Work-Study Program.  If this matter were to proceed to summary judgment, Plaintiffs would face a considerable risk of this Court or the Second Circuit ruling that the Work-Study Program was a valid unpaid internship or vocational training program under *Glatt*.   And, if the Work-Study Program is a valid unpaid internship or vocational training program, then Plaintiffs' damages would be $0.

The proposed settlement alleviates the uncertainty of litigation. The fourth and fifth *Grinnell* factors weigh heavily in favor of preliminary approval.

**5.      Establishing a Class and Maintaining it Through Trial Would Not Be Simple (*Grinnell* Factor 6)**

The risk of establishing and maintaining class certification through trial is also present.  In particular, if this matter were not to settle, the Defendants would likely

argue that changes in the Work-Study Program between 2016 and 2022 make class-treatment improper; Defendants would argue that every separate cohort of Work-Studies experienced different conditions, and need to be analyzed separately under *Glatt*. There is also a risk that, even if Plaintiff were successful in establishing collective and class certification, the Defendants would seek de-certification of the class. If Plaintiff ultimately were to prevail in avoiding de-certification, the Defendants would potentially seek permission to file an interlocutory appeal under Federal Rule of Civil Procedure 23(f).

Risk, expense, and delay are involved in each of these steps in the litigation. Settlement eliminates this risk, expense, and delay. The sixth *Grinnell* factor favors preliminary approval.

### 6. Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7)

"Case law recognizes that potential difficulty in collecting damages militates in favor of finding a settlement reasonable." *See Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013). *Cf. Kirby v. FIC Rest., Inc.*, No, 19-CV-1306, 2020 U.S. Dist. LEXIS 178109 at *9 (N.D.N.Y., Sept. 28, 2020) (weighing pending bankruptcy proceedings); *Faroque v. Park West Exec. Servs.*, No. 15 CV 6868, 2020 U.S. Dist. LEXIS 15839, *14-15 (E.D.N.Y., Jan. 29, 2020) (weighing likelihood of Defendant taxi company failing due to competition from ride-sharing companies).

While Defendants' business did turn a profit in the best of times, Defendants' business, like many fitness businesses, suffered from COVID-era restrictions on in-person gatherings. At present Body & Pole's finances are marginal. Defendants

repeatedly represented that they were unable to afford the cost of defending this suit—much less the cost of any judgment if Plaintiffs' legal argument were to prevail—and indeed had retained bankruptcy counsel at the time that a settlement in principle was reached. Simply put, Plaintiffs believe that, but for the instant settlement, Defendants would file for bankruptcy protection and the Class would receive no compensation whatsoever. The seventh *Grinnell* factor favors the granting of preliminary approval.

### 7. The Settlement Amount is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

The determination of whether a settlement amount is reasonable "does not involve use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognized the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Plaintiffs believe that the total unpaid wages in this matter are approximately $1.02 million; the actual amount that will be distributed to the Class—after anticipated service enhancements for the Named Plaintiffs, administrator's costs and attorneys fees—is about $70,000. However, while the settlement represents a small fraction of Defendants' maximum liability, we believe that Class Members would be

likely to recover even less if the Defendants sought bankruptcy protection. Moreover, in the event that Defendants were to prevail in litigation based on their argument that the benefits afforded to Work-Studies, including free access to mentorships, showcases, professional workshops, studio space, and unlimited classes at Body & Pole, rendered the Work-Study Program a valid unpaid internship or vocational training program, then Plaintiffs would recover nothing.

Furthermore, Defendants have promised to permanently end the Work-Study Program and issue a statement expressing appreciation for Work-Studies' contributions to Body & Pole and to the industry as a whole. While of no monetary value, those promises are nonetheless meaningful to Plaintiffs, who brought this litigation in part to reform an entire industry that they claim often abuses interns— including by expecting interns to work without pay. In light of the risk of Defendants declaring bankruptcy or prevailing in litigation, and in light of non-monetary concessions by Defendants, we believe the settlement is on balance worthy of approval. Accordingly, all of the *Grinnell* factors weigh in favor of issuing preliminary approval of the settlement.

## B.     Under Amended Rule 23(e), Preliminary Approval is Appropriate

Under Rule 23(e), preliminary approval of a settlement is appropriate, and notice should be sent to the Class, if the parties show "that the court will likely be able to:  (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).   In this Section I.B, we discuss why the Court will likely be able to approve the parties' proposed

settlement under Rule 23(e)(2). In Section II below, we discuss why the Court will likely be able to certify the Rule 23 Class proposed by the settlement. Because both prongs of Rule 23(e)(1)(B) are met, the Court should grant preliminary approval of the Settlement.

### 1. The Class Representatives and Class Counsel Have Adequately Represented the Class / Rule 23(e)(2)(A)

The experience, qualifications and work of Class Counsel are discussed in Section IV below (in the context of their appointment as Class Counsel under Rule 23(g)); and the adequacy of the Named Plaintiffs as Class Representatives is discussed in detail in Section II.B below (in the context of certification of the class under Rule 23(a)(4)). We respectfully submit that Granovsky & Sundaresh and the Named Plaintiffs have and will zealously represent the Class.

### 2. The Settlement Was Negotiated At Arm's Length / Rule 23(e)(2)(B)

"There is a presumption that a class action settlement is fair, reasonable, and adequate where it is 'reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Buchanan*, 2020 U.S. Dist. LEXIS 188658, at *16 (quoting *Wal-Mart*, 396 F.3d at 116.)

Here, as discussed above, settlement was the result of months of adversarial discovery and settlement discussions. Both sides were represented by experienced, capable counsel.

### 3.    The Settlement Grants Adequate Relief / Rule 23(e)(2)(C)

As discussed above in connection with *Grinnell* factors 8 and 9, the Settlement provides monetary and non-monetary relief to the Class members:.  Rule 23(e)(2)(C) required the Court to take four factors into account in determining if that Settlement provides adequate relief.  Considering those four factors, the Settlement clearly does.

Factor (i):  The costs, risks and delay of trial and appeal:  This factor overlaps with *Grinnell* factors 1, 4, 5 and 6.  *See Buchanan*, 2020 U.S. Dist. LEXIS 188658, at *19-*20.  As discussed above in connection with those *Grinnell* factors, there would be extensive costs, risks and delays of trial and appeal in the this case.  This factor favors the adequacy of the relief provided for by the Settlement.

Factor (ii):  The effectiveness of how relief will be distributed to the class:  As discussed above, the Settlement provides for the appointment of an administrator to distribute the settlement proceeds to the Class Members.  Ex. B. at ¶1.18.  The identities, addresses and telephone number of the Class Members will be located in Defendants' records and via skip-trace. This factor favors the adequacy the relief provided for by the Settlement.  *Cf. Buchanan*, 2020 U.S. Dist. LEXIS 188658, at *21.

Factor (iii):  Any proposed award of attorney's fees: Consistent with the Settlement, Class Counsel will move this Court to approve $36,000 in attorney's fees, representing approximately 30% of the gross Settlement Amount.

Courts in this Circuit regularly find that fees representing 30% to 33.3% of the gross settlement are reasonable in wage-and-hour cases.  *See Romero v. Westbury Jeep Chrysler Dodge, Inc.*, No. 15-cv-4145, 2016 U.S. Dist. LEXIS 46462, at *4

(E.D.N.Y. April 6, 2016) (approving 30%, noting Second Circuit courts find 33% to be reasonable); *Meza v. 317 Amsterdam Corp.*, No. 14-CV-9007, 2015 U.S. Dist. LEXIS 166890, at *5 (S.D.N.Y. Dec. 14, 2015) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases"); *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187, 2015 U.S. Dist. LEXIS 162243, at *5 (S.D.N.Y. Dec. 3, 2015) ("Fee awards representing one third of the total recovery are common in this District.").

Courts in this Circuit regularly cross-check the reasonableness of percentage-of-the-fund fee awards by asking what multiple those fees are of the fees class counsel would receive under a lodestar method; those courts regularly find that multiples of 2 confirm the reasonableness of percentage-of-the-fund fee awards in wage-and-hour cases. *See Hall v. Prosource Techs., LLC*, No, 14-CV-2502, 2016 U.S. Dist. LEXIS 53791, *53-54 (E.D.N.Y., April 11, 2016); *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014).

Here—in light of the substantial time invested in this matter by Granovsky & Sundaresh—the final multiplier will be less than 1. Thus, this Rule 23(e)(2)(C) factor favors the adequacy of the relief provided by the Settlement.

The Court should note that it need not rule on fees and costs now. *Cf. Buchanan*, 2020 U.S. Dist. LEXIS 188658, at *22. Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Class Counsel will file a motion for approval of attorneys' fees and reimbursement of expenses along with Plaintiff's Motion for Final Approval of the Settlement, or at such time as the Court prefers.

Factor (iv): The terms of any Rule 23(e)(3) agreement: Under Rule 23(e)(3), the Court must consider any agreement made in connection with the class settlement. Here, the only such agreement is the provision, in the Settlement, to provide the Named Plaintiffs with service awards of $1000 each. These awards, representing in total less than 3% of the Gross Settlement, are well within the range of those regularly approved in this Circuit. *See, e.g., Gonzalez v. PB Hudson LLC*, No. 17-CV-2010, 2019 U.S. Dist. LEXIS 238839 (April 4, 2019) (approving service and release payments equal to about 8.5% to one named plaintiff) (Broderick, J.); *Baten v. Mr. Kabob Rest. Inc.*, 16-CV-9559, 2019 U.S. Dist. LEXIS 234811 (approving service and release payments equal to about 6% to one named plaintiff) (Broderick, J.).

In sum, all four Rule 23(e)(3) factors favor a finding that the relief provided for by the Settlement is adequate.

### 4. The Settlement is Equitable / Rule 23(e)(2)(D)

"Questions to consider under this factor 'could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief.'" *Buchanan*, 2020 U.S. Dist. LEXIS 188658, at *24 (quoting the 2018 Advisory Committee Notes to Fed. R. Civ. P. 23(e)(2)(D)).

Here, the Settlement contemplates a straightforward distribution to all the Class Members in proportion to length of time they worked for Defendants as Work-Studies. The Defendants are only able to fully fund the Settlement over 36 months,

and so the Settlement contemplates three tranches of payments, one every 12 months. The Settlement prioritizes those individuals with the greatest involvement in the suit (the Named Plaintiffs and the Opt-Ins), and then pays the Class Members in the order in which they performed their work. Except for those differences in the timing of payments, all Class Members are treated identically, and their award will be in proportion to their damages, as ascertained through the best means reasonably available to the parties.

_____

In sum, considering the *Grinnell* factors and each of the prongs of Rule 23(e)(2), the Court is likely to be able to approve the proposed Settlement. Because conditional certification is also appropriate, as discussed in Section II below, the Court should grant preliminary approval to the Settlement.

## II.      Preliminary Approval of the Rule 23 Class Is Appropriate

For settlement purposes, the parties seek to certify a class under Federal Rule of Civil Procedure 23. In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Buchanan*, 2020 U.S. Dist. LEXIS 188658, *6 (citation and quotation omitted).

The proposed settlement class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality and adequacy, and Rule 23(b)(3)'s requirements of predominance and superiority. Defendants have agreed, for the purposes of settlement only, not to contest class or subclass certification. *See, e.g., County of*

*Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd in relevant part*, 907 F.2d 1295, 1321-25. The Court should therefore provisionally certify the settlement class, and appoint Plaintiff's Counsel as Class Counsel and the Named Plaintiffs as class representatives.

## A.    Numerosity

The proposed class satisfies the numerosity requirement because there are approximately 115 class members in the Class. *See* Delson Decl. ¶31. "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

## B.    Commonality

The commonality requirement (like the typicality requirement) asks "'whether the named plaintiff's claim and the class claims are so interrelated that the interest of the class members will be fairly and adequately protected in their absence.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005) (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). The claims of the named plaintiff and the class need not be identical, but they must share "a common nucleus of operative facts or an issue that affects all members of the class." *Buchanan*, 2020 U.S. Dist. LEXIS 188658, at *8 (citation omitted).

Here, the Named Plaintiffs and the Class Members all face a common question of law arising from the same operative facts. The Named Plaintiffs and the Class

Members were all Work-Studies.  They all performed work for Defendants without receiving the minimum wage, and they performed that work under the same terms and conditions: the strictures of Defendants' Work-Study Program.  The Named Plaintiffs and the Class Members will all confront an identical legal issue:  whether the Work-Study Program was or was not a valid unpaid internship or vocational training program under *Glatt* and its progeny.  In the absence of class certification and settlement, each individual class member would be forced to litigate the identical *Glatt* issue separately.

## C.    Typicality

Rule 23 requires that the claims of the representative party be typical of the claims of the class and subclass. "[T]ypicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182.  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Guiliani*, 126 F.3d 372, 376 (2d Cir. 1997) (citations omitted).

The Named Plaintiffs could not be more typical Class Members.  All three Named Plaintiffs worked for Defendants without pay subject to the same terms and conditions as every other Work-Study.  The Named Plaintiffs' legal claim—that the Work-Study Program was not a valid unpaid internship or vocational training program under *Glatt* and its progeny—is the same legal claim that would be made by every Work-Study.  *See Frank*, 228 F.R.D. at 182 (finding that class members

satisfied the typicality requirement where all class members allege that defendant violated identical wage and hour law); *Ahlquist v. Bimbo Foods Bakeries Distrib. Inc.,* No. 12-cv-01272, 2013 U.S. Dist. LEXIS 7660 at *3-*6 (D. Conn., Jan. 18, 2013) (finding that class members satisfied the typicality requirement where Defendants had policy of misclassifying workers as independent contractors in violation of wage-and-hour law).

## D. Adequacy of the Named Plaintiff as Class Representative

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the class representatives will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys.*, No. 05-cv-5237, 2007 U.S. Dist. LEXIS 74056, at *18-19 (S.D.N.Y. Sep. 28, 2007) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)). The central inquiry is whether the class representative will have the "incentive to maximize the recovery of all class members." Id.

The Named Plaintiffs have no interests that are antagonistic to or at odds with the Class Members; in particular, none of the conduct by Defendants that is alleged to have harmed the Class Members (*i.e.* permitting the Class Members to perform work without pay) benefited the Named Plaintiffs in any way. The Named Plaintiffs have been actively involved with Class Counsel, in identifying witnesses, formulating

strategy, and negotiating the best available settlement under the circumstances. *Cf.*

*Ahlquist*, 2013 U.S. Dist. LEXIS 7660 at *5-*6.

**E.    Certification is Proper Under Rule 23(b)(3)**

Rule 23(b)(3) requires that common questions of law or fact not only be present,

but also that they "predominate over any questions affecting only individual members

and that a class action is superior to other available methods for the fair and efficient

adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The fact that a proposed

class representative meets the criteria of Rule 23(a) "goes a long way toward

satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy &*

*Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

**1.    <u>Common Questions Predominate</u>**

To establish predominance, Plaintiff must demonstrate that "the issues in the

class action that are subject to generalized proof, and thus applicable to the class as

a whole, … predominate over those issues that are subject only to individualized

proof." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08

(2d Cir. 2007) (cleaned up).  Predominance exists where "liability can be determined

on a class-wide basis, even when there are some individualized damage issues."

*Marriott v. County of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005) (quoting *In*

*re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001)).

Here, liability can be determined on a class-wide basis because  the terms and

conditions of the Work-Study Program were identical, or nearly identical, for

everyone who served as Work-Study.  Therefore, the answer to the central question

of law in this case—whether or not the Work-Study Program was a valid unpaid internship or vocational training program under *Glatt* and its progeny, and therefore whether or not each Work-Study was owed a minimum wage—will be identical for every Work-Study. *See, e.g., Ahlquist,* 2013 U.S. Dist. LEXIS 7660 at *3-*6 (granting conditional certification to settlement class where Defendants had policy of misclassifying workers as independent contractors in violation of wage-and-hour law); *Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (the issue of whether employees are supposed to be paid wages is "about the most perfect question[] for class treatment").

### 2. A Class Action is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis asks whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." Rule 23(b)(3) includes a non-exclusive list of factors for the Court to consider in making that determination, including: whether individual class members wish to control individual actions; have already brought individual actions; the desirability of concentrating the litigation of the claims in the particular forum; and the manageability of the class.

Here, all considerations favor class treatment. The Class Members were, by and large, dancers and artists, busy trying to survive in New York. While many believed their treatment as Work-Studies was unfair, until the Named Plaintiffs brought this suit, none had the time or resources to seek recourse. Plaintiff is unaware of any pending individual lawsuits filed by the Class Members arising from

the same allegations. Regarding the forum, all of the allegedly wrongful conduct occurred in Manhattan. Because the parties seek certification in the context of a settlement, the manageability factor is not relevant. *See Frank*, 228 F.R.D. at 183.

## III.  Approval of FLSA Collective Settlement Is Appropriate

Generally, the "standard for approval of an FLSA settlement is lower than for a class action under Rule 23." *Guaman v. Ajna-Bar NYC*, No. 12-Civ.-2987, 2013 U.S. Dist. LEXIS 16206, at \*15 (S.D.N.Y. Feb. 5, 2013).  This follows because FLSA collective actions do not implicate the same due process concerns as Rule 23 class actions; in an FLSA collective action, no party is bound by the collective action settlement who did not affirmatively opt into the collective action. Id.

The Settlement contemplates a three-step procedure for settlement of the FLSA claims in this action:  first, preliminary approval of the proposed Settlement and conditional certification of a collective action, which is what Plaintiffs seek today; second, notice to the FLSA Collective Action Plaintiffs (with an affirmative opportunity to opt out); and third, after a fairness hearing, final approval and the distribution of checks, with any Class Member who endorses their check waiving their rights under the FLSA.  Courts in this district routinely use a similar process in the settlement of FLSA Collective Actions. *See, e.g., Gonzalez v. PB Hudson LLC*, No. 17-CV-2010, 2018 U.S. Dist. LEXIS 242066 (S.D.N.Y. Oct. 10, 2018) (preliminary approval) and 2019 U.S. Dist. LEXIS 238839 (S.D.N.Y. April 4, 2019) (final approval) (Broderick, J.)

As to the appropriateness of conditional certification, we respectfully refer the Court to our unopposed motion for conditional certification (Docket #45 - #47, #53). As to the fairness of the Settlement, district courts typically evaluate the fairness of a settlement agreement by considering the factors outlined in *Wolinsky v. Scholastic Inc.,* 900 F. Supp. 2d 332 (S.D.N.Y. 2012), which include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

> In addition, if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs.

*Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2019) (cleaned up). Here, the *Wolinsky* factors favor approval.

*Factor 1: The Plaintiffs' Range of Recovery:* While Plaintiffs believe that this Settlement results in payments to the FLSA Collective Action Plaintiffs that are a only a small fraction of their unpaid wages, Plaintiffs also believe that, in the absence of settlement, the Defendants will declare bankruptcy, likely resulting in an even smaller recovery. Because of this very high risk that Defendants cannot withstand a larger judgment, this recovery is reasonable. *See* Delson Decl. ¶¶45-47.

*Factors 2 & 3: The Avoidance of Litigation Expenses & Risk*: As discussed above, if this case does not settle, the parties will likely have to engage in costly discovery and motions practice; given the likelihood that the case would be decided

on summary judgment, with potentially millions of dollars of liability in the balance, appeals would be likely. Defendants assert, and Plaintiffs believe, that those litigation costs would drive Defendants to file for bankruptcy protection. Thus expense and very considerable risk of litigation favor preliminary approval.

*Factors 4 & 5: The Settlement is Arm's Length & without Fraud or Collusion*: As discussed above, this Settlement is the result of extensive arm's length negotiations. *See* Delson Decl. ¶¶32-40.

Attorneys Fees: As discussed above, the attorney's fees sought in this case are reasonable. *See* Delson Decl. ¶¶60-64.

## IV. Plaintiff's Counsel Should Be Appointed Class Counsel

The lawyers representing the Named Plaintiffs, Granovsky & Sundaresh PLLC, should be appointed as Class Counsel. Rule 23(g) governs the appointment of class counsel for a certified class and provides four criteria the Court must consider in evaluating the adequacy of proposed counsel: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(B). "No single factor should necessarily be determinative in a given case." *See* Fed. R. Civ. P. 23, Advisory Committee's Note to Former Section 23(g)(1)(C).

The proposed Class Counsel attorneys meet all of these criteria. Granovsky & Sundaresh has spent in excess of one hundred hours investigating and litigating Plaintiffs' claims, including personally interviewing about 20% of the Class Members. Delson Decl. ¶¶7, 27. The firm is fully committed to devoting all resources necessary to vindicating the interests of the Class—and indeed continued to invest heavily in this action even as it became clear that the recovery would be less than originally anticipated. Delson Decl. ¶¶ 8, 34. Granovsky & Sundaresh has repeatedly been approved as counsel in FLSA collective actions in this Circuit, and the lead counsel in this matter, Benjamin Rudolph Delson, is a litigator with twenty years of experience in the state and federal courts of New York, who now dedicates more than of 90% of his professional time to representing employees in wage and hour, discrimination, and other workplace matters. Delson Decl. ¶¶ 4-6.

V.        **The Proposed Notice Is Appropriate**

Proposed Settlement Notices are attached as Exhibits 2 and 3. The Proposed Settlement Notice complies with the requirements of Rule 23(c)(2)(B). The Notice describes, in detail, all terms of the Settlement (including the timeline for, and sequencing of, settlement payments). The Notice informs the Class of the size of the settlement amount, and informs the Class of Defendant's potential bankruptcy. The Notice informs the Class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. Accordingly, the proposed Settlement Notice to Class Members is more than adequate

to put class members on notice of the proposed Settlement and is well within the requirements of Rule 23(c)(2)(B).

## **<u>CONCLUSION</u>**

For the reasons set forth above, Plaintiffs respectfully request (and Defendants do not oppose) that the Court grant the Motion for Preliminary Approval of Class and Collective Action Settlement and enter the Proposed Order. A proposed order is attached as Exhibit 7.

Dated:       New York, New York
               November 9, 2022

Respectfully Submitted,

GRANOVSKY & SUNDARESH PLLC

*/s/ Benjamin Rudolph Delson*
Benjamin Rudolph Delson
Alexander Granovsky
48 Wall Street
New York, NY 10005
delson@g-s-law.com / ag@g-s-law.com
(646) 524-6001
*Attorneys for Plaintiffs*