UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEGHAN PIPER JOHNSON, REBECCA PARDUE and RODENELLIE PLUVIOSE, on behalf of themselves and all other persons similarly situated,<br><br>        *Plaintiffs,*<br>  v.<br><br>BODY & POLE, INC. and KYRA JOHANNESEN,<br><br>        *Defendants.* | Case No. 22-CV-00857<br><br>Judge Vernon S. Broderick |

**DECLARATION OF BENJAMIN RUDOLPH DELSON
IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF THE PROPOSED CLASS AND
COLLECTIVE ACTION SETTLEMENT**

I, Benjamin Rudolph Delson, declare as follows:

1. I am an attorney admitted to the practice of law in New York, California and Ohio, as well as before this Court. I am of counsel to Granovsky & Sundaresh PLLC, counsel for the Plaintiffs in this action, *Meghan Piper Johnson et al. v. Body & Pole, Inc. et al.*, No. 22-CV-00857 (VSB).

2. Together with Alexander Granovsky, a founding partner of Granovsky & Sundaresh PLLC, I am the lawyer with principal responsibility for representing the Plaintiffs in this action.

3. This declaration is based upon my personal knowledge and my work

representing the Plaintiffs in this matter.

**<u>Qualifications of Counsel for the Plaintiffs</u>**

4. I have practiced law in New York since 2003. I am also a member of the bar in Ohio and California. Since 2017, when I joined Granovsky & Sundaresh PLLC, I have exclusively practiced employment law. Today, well over 90% of my practice is representing employees in wage and hour, discrimination and retaliation litigation, in both federal and state courts, as well as in arbitration and mediation. I am a 2002 graduate of N.Y.U. Law, where I served on law review and where I graduated as Order of the Coif. In 2002-2003 I served as a law clerk to the Honorable James R. Browning of the United States Court of Appeals for the Ninth Circuit, sitting in San Francisco.

5. Granovsky & Sundaresh PLLC was co-founded in New York City in 2009 by my N.Y.U. Law classmate Alex Granovsky.

6. The firm has substantial experience litigating and settling employment actions, including wage and hour class and/or collective actions. Recent cases in the Second Circuit in which Granovsky & Sundaresh has acted as lead counsel in cases bringing collective actions under the Fair Labor Standards Act ("FLSA") and/or Rule 23 class actions under state wage-and-hour laws include: *Chowdhury et al v. Raja 786 Food Inc. et al*, 20-cv-04235 JRC (EDNY); *Munoz et al v. ACA Contracting Inc. et al*, 2:19-cv-03824-JS-AKT (EDNY); *Bumford et al v. Brooklyn Chrysler Jeep Dodge Ram et al*, 1:19-cv-04176-DLI-CLP (EDNY); *Mrkulic v. Cal-Ton Management LLC et al*, 1:17-cv-00924-JBW-PK (EDNY) and *Barbato et al v. Knightsbridge Properties,*

2:14-cv-07043-JS-SIL (EDNY).

7. As of the Court's September 19th Order, I had spent 113.2 hours litigating this matter, including interviewing the named plaintiffs and the nineteen party plaintiffs, as well as non-party witnesses; pursuing discovery, reviewing documents and constructing damages analyses; drafting pleadings and motions; and participating in mediation and settlement discussions. Alex Granovsky had spent an additional 13.1 hours on this matter. Attached as **Exhibit 4** are contemporaneous records of our work on this matter through September 19.

8. Granovsky & Sundaresh has committed and will continue to commit all necessary time and resources to resolving this matter, including committing the attorneys and administrative staff necessary to overseeing settlement over the coming months and years. I expect that, by the time of a final settlement approval hearing, I will have spent in excess of 150 hours in this matter. Alex Granovsky will also spend additional time.

**Procedural History**

9. Plaintiffs Meghan Piper Johnson, Rebecca Pardue and Rodenellie Pluviose (the "Named Plaintiffs") commenced this matter on February 1, 2022 with the filing of the Complaint, which is attached as **Exhibit 5**. Docket #1.

10. Granovsky & Sundaresh PLLC represented the Plaintiffs, with myself, Benjamin Rudolph Delson, as lead counsel.

11. The Complaint named as Defendants Body & Pole, Inc. ("Body & Pole"), and its owner, Kyra Johannesen (together, "Defendants").

12. The gravamen of the Complaint was that all three Named Plaintiffs had served as "Work-Studies" at Body & Pole, which operates a dance studio in Manhattan. The Complaint alleged that, during their tenure as Work-Studies, the Named Plaintiffs had performed approximately 15 hours per week of work for Defendants, for which they had received no wages. The Complaint alleged that this arrangement violated both the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

13. The Complaint proposed to bring a Collective Action under Rule 216(b) of the FLSA, on behalf of all Work-Studies employed by Defendants in the three years prior to the filing of the Complaint, as well as a Class Action under Rule 23 of the Federal Rules of Civil Procedure alleging violations of NYLL, on behalf of all Work-Studies employed by Defendants in the six years prior to the filing of the Complaint.

14. The case was assigned to Judge Vernon S. Broderick.

15. Immediately after the filing of the Complaint, word spread about this lawsuit among the current and former Work-Studies at Body & Pole, many of whom began contacting counsel for the Plaintiffs seeking to join the lawsuit. Between February and April 2022, nineteen former Work-Studies submitted consents to become party plaintiffs in this matter (the "Opt-Ins"). See Docket #8-11, #13-14, #18-26, #29-30, #34 and #37.

16. On February 9, the Defendants waived service, and on February 24, the law firm Weinstein & Klein P.C. appeared for Defendants. Docket #12, #15-16.

17. On April 6, the Defendants retained new counsel, substituting the law firm of Golenbock Eiseman Assor Bell & Peskoe for Weinstein & Klein P.C.

18. On April 19, the Defendants publicly announced that they had decided to end their Work-Study program in June 2022.

19. In May 6, 2022, the Defendants answered, denying all liability, and asserting that the Work-Study program was a valid internship or vocational training program under both the FLSA and NYLL. Docket #39. The Answer is attached as **Exhibit 6**.

20. The matter was referred to the SDNY Mediation Office for mediation. Docket #17. In anticipation of mediation the parties entered into a confidentiality stipulation, Docket #35-36, and the Defendants produced extensive financial disclosures, including complete individual and corporate tax returns dating back six years.

21. Mediation was held before Mr. Roger Briton on May 31, but did not result in settlement.

22. On May 31, after mediation failed to produce a settlement, the Plaintiffs moved for conditional certification of a collective action under the FLSA. Docket #44-47.

23. In June, the parties met and conferred, and agreed to a case management plan. The Defendants agreed to stipulate to conditional certification of the FLSA collective action. Docket #52-53.

24. Settlement discussions continued in fits and starts through the summer, and the parties reached a settlement in principal on September 16. Docket #62.

**History of Discovery and Plaintiffs' Counsel's Investigations**

25. This case is unusual in that there are comparatively few disputed facts. The parties agree, broadly speaking, about the terms and conditions of the Defendants'

5

Work-Study Program, the identity of the Work-Studies, and the hours worked by those Work-Studies.

26. As a result, Plaintiffs anticipated from the outset of this litigation that comparatively little fact discovery would be needed. Plaintiffs anticipated that the case would turn on a legal question that was likely to be resolved in summary judgment: whether the Work-Study Program was or was not a valid unpaid internship or vocational training program under *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F. 3d 528 (2nd Cir. 2016) and its progeny.

27. Nevertheless, Plaintiffs spent substantial time developing witnesses who could testify about the terms and conditions of the Work-Study Program, including detailed interviews with the three named plaintiffs, all nineteen individuals who opted into the FLSA Collective Action, as well as other Work-Studies who chose not to opt in.

28. From early in the litigation, Plaintiffs were able estimate the total number of hours of work performed for Defendants by all Work-Studies since February 2016 (even if Plaintiffs did not yet know who all the Work-Studies were, or which of them had worked how many hours). Thus, Plaintiffs were able to accurately calculate the total unpaid wages owed to all Work-Studies since 2016 under federal and New York State wage laws. Plaintiffs' early estimates were that the total unpaid wages were about $1.1 to $1.2 million—implying total liability, with liquidated damages, of $2.2 to $2.4 million, plus interest, costs and attorneys fees.

29. Plaintiffs shared these early estimates with counsel for the Defendants, who indicated early on that the Defendants were unlikely to be able to afford to pay even

a small fraction of the liability calculated by Plaintiffs. Indeed, Defendants claimed that they could not afford even to defend the suit. Plaintiffs therefore conducted research in Defendants' financial condition, including obtaining and reviewing six years of Defendants' tax returns.

30. Plaintiffs were later able to obtain, through discovery, Defendants' own records of the Work-Studies' time at Body & Pole. This permitted Plaintiffs to refine their damages estimates. At present, Plaintiffs believe that, if Defendants were to owe the Work-Studies the New York City minimum wage for all hours worked by Work-Studies from 2016 (when the New York City minimum wage was $9 per hour) to 2022 (when it was $15 per hour), then the total unpaid wages owing to the Work-Studies would be approximately $1.02 million.

31. At present, Plaintiffs believe that there were approximately 115 Work Studies between February 2016 and June 2022, based on Defendants' records.

**Settlement Negotiations**

32. As discussed, mediation was held before Mr. Roger Briton on May 31, but did not result in settlement.

33. However, after mediation, as discovery got underway, the parties continued to negotiate.

34. As discussed, from the outset Defendants indicated that they were at risk of insolvency. Defendants have unresolved tax obligations, face increased costs of leasing their flagship studio in Midtown Manhattan, and suffered a dramatic loss of revenue during the pandemic due to public health orders that severely limited the

7

operations of gyms and dance studios alike. In light of Defendants' financial position, which Plaintiffs sought to verify through a review of Defendants' tax returns, Plaintiffs dramatically reduced their settlement demand, but the parties were unable to reach agreement on terms.

35. Over the course of July and August, counsel for the Defendants informed counsel for the Plaintiffs that the Defendants had paid a retainer to bankruptcy counsel and that a bankruptcy filing was imminent. The parties were still unable to agree on terms however.

36. In September, after consulting with the Opt-Ins, the Named Plaintiffs agreed that they could accept the gross settlement amount in Defendants' final, pre-bankruptcy offer, on one condition: that Defendants agree to issue a statement of apology to its former Work-Studies.

37. The parties were ultimately able to negotiate an agreed statement to be issued in connection with settlement.

38. On September 16, the parties informed the Court of their settlement in principle.

39. All negotiations were conducted at arm's length. Both sides were represented by counsel with extensive experiencing both litigating and resolving wage-and-hour and employment disputes.

40. The Named Plaintiffs were actively engaged at every step of negotiations, and counsel for the Plaintiffs maintained regular communications with the 19 Opt-Ins to obtain their feedback on settlement as well.

**The Terms of the Settlement Agreement**

41. The Settlement Agreement is attached as **Exhibit 1.**

42. *Eligibility:* All individuals who worked as Work-Studies for the Defendants from February 1, 2016 to the present (the "Class Members") will be eligible to participate in the settlement. Ex. 1, ¶¶ 1.4, 3.1.

43. *Settlement Amount:* The settlement provides for the Defendants to pay a total gross settlement amount of one hundred twenty thousand dollars ($120,000.00) (the "Gross Settlement Amount") to settle this action. The cost of settlement administration (capped at $12,000) will be paid out of the Gross Settlement Amount, leaving a total (the "Net Settlement Amount") that is anticipated to be roughly $108,000. Two-thirds of the Net Settlement Amount will be distributed to the plaintiffs; one-third is allocated as Plaintiffs' attorneys fees. Ex. 1, ¶¶ 1.27, 3.

44. Defendants will fund the settlement over 3 years, making payments of $40,000 by the first, second and third anniversary of settlement. Ex. 1, ¶ 3.1(D).

45. Plaintiffs anticipate that the settlement will compensate Class Members at a rate of roughly $9 per week worked for weeks worked in 2016 (when the New York City minimum wage was $9/hour), rising to roughly $15 per week worked for weeks worked in 2022 (when the New York City minimum wage was $15 per hour).

46. By way of comparison, if Body & Pole had paid its Work-Studies the New York City minimum wage, a typical Work-Study would have been paid approximately $135 per week worked in 2016, and approximately $225 per week worked in 2022.

47. However, Plaintiffs believe that if this settlement were not agreed to, the

Defendants would likely declare bankruptcy and the recovery for the Class Members would likely be even smaller.

48. The settlement anticipates service awards to the three named Plaintiffs of $1000 each, to be paid in the first round of payment. Ex. 1, ¶ 3.1(B).

49. **Settlement Timing:** The settlement contemplates three rounds of payments to Class Members who do not opt out. To reduce administrative costs, rather than sending three checks to each Class Member, the settlement contemplates sending one check to each Class Member, beginning with the Class Members whose tenure as Work-Studies is most remote in time, and ending with Class Members whose tenure is most recent—while also prioritizing payments to the party plaintiffs. Ex. 1, ¶ 3.1(E).

50. In the first round (in 2023), full settlement payments will be sent to the three Named Plaintiffs, the nineteen Opt-Ins, and however many of the remaining Class Members can be paid in full with the the balance of that first $40,000 payment. In the second round (in 2024), full settlement payments will be sent to as many of the remaining unpaid Class Members as can be paid in full with the second $40,000 payment. In the third round (in 2025), full settlement payments will be sent to the remaining unpaid Class Members. Ex. 1, ¶ 3.1(E).

51. As discussed below, the settlement anticipates that the cost of administering the settlement and Plaintiff's attorney's fees will be paid out of Settlement Fund. One third of the administrative costs and one third of the total approved attorney's fees will be paid with each of the three rounds of settlement payments. Ex. 1, ¶ 3.1(E).

52. ***Releases:*** The settlement contemplates that the three Named Plaintiffs will release all claims against the defendants. Ex. 1, ¶ 4.1(D).

53. Any Class Member who does not opt out of the settlement will release all claims under NYLL against the Defendants, and any Class Member who endorses their settlement check will release all claims under the FLSA. Ex. 1, ¶¶ 4.1(A) & (B).

54. The settlement provides that, in the event that the Defendants default in funding the Settlement Fund, any Class Member who has not received their settlement payment will not release any claims as against the Defendants. Ex. 1, ¶¶ 4.1(I).

55. ***Notices:*** The settlement provides for a notice to be distributed to the Work-Studies by U.S. Mail and via email, with a subsidiary notice to be sent via text message to any Work-Study whose U.S. mail and email notices are returned as undeliverable. Ex. 1, ¶ 2.5.

56. Proposed notices are attached as **Exhibits 2 & 3.**

57. ***The Agreed Statement & the End of the Work-Study Program:*** In connection with the settlement, the Defendants have agreed to issue a public statement. Ex. 1, at Exhibit 1.

58. In that statement Defendants express remorse that "the Work Study program did not meet the expectations of some participants and that they feel it was in any way unlawful."

59. Defendants reaffirm Body & Pole's commitment to ending our Work Study program and pledge "we will no longer run such a program or anything like it in the

foreseeable future."

60. ***Administration Costs & Attorney's Fees:*** Pursuant to the settlement, the costs of administrating the settlement will be paid out of the Settlement Fund, up to a total of $12,000. In the event that settlement administration costs more than $12,000, the Defendants will pay 100% of the excess administration costs. Ex. 1, ¶ 3.3. The parties have agreed to recommend that the Court appoint Arden Claims Service LLC, a well-established national claims administration company, as Settlement Administrator.

61. The settlement provides that Granovsky & Sundaresh PLLC may move this Court to approve its attorney's fees in an amount up to 33% of the net Settlement Fund (i.e.m the Settlement Fund less settlement administration costs). Given that the parties anticipate that settlement administration will cost approximately $12,000, I anticipate that Granovsky & Sundaresh will seek approximately $36,000 in attorney's fees, representing 30% of the gross Settlement Fund. Ex. 1, ¶ 3.2.

62. As of the Court's Order on September 19, I had spent 113.2 hours in this matter, and Alexander Granovsky had spent 13.1. My and Mr. Granovsky's contemporaneous time records through September 19, 2022 are attached as **Exhibit 4**.

63. My top hourly rate for Granovsky & Sundaresh PLLC clients is $415 per hour, which the firm often discounts to $385 per hour for large matters. Mr. Granovsky's hourly rate is $475 per hour.

64. At an hourly rate of $385 for my time, my total fees in this matter (were my

time billed hourly) would be $43,582. At an hourly rate of $475 for his time, Mr. Granovsky's total fees in this matter (were his time billed hourly) would be $6,222.50. Our total hourly fees to date in this matter would thus be approximately $49,804.50.

65. A Proposed Order granting preliminary approval to the settlement is attached as **Exhibit 7**.

I declare under penalty of perjury, under 28 U.S.C.§1746, that the foregoing is true and correct.

Dated: New York, New York
November 9, 2022

> Respectfully Submitted,
>
> GRANOVSKY & SUNDARESH PLLC
>
> /s/ Benjamin Rudolph Delson
> Benjamin Rudolph Delson
> 48 Wall Street, 11th Floor
> New York, NY 10005
> delson@g-s-law.com
> (646) 524-6001
> *Attorneys for Plaintiffs*

13