# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

MEGHAN PIPER JOHNSON, REBECCA PARDUE and RODENELLIE PLUVIOSE, on behalf of themselves and all other persons similarly situated,

Case No. 22-CV-00857

Judge Laura Taylor Swain

*Plaintiffs,*

v.

BODY & POLE, INC. and KYRA JOHANNESEN,

*Defendants.*

**MEMORANDUM OF LAW IN SUPPORT OF THE UNOPPOSED MOTION FOR FINAL APPROVAL OF THE PROPOSED CLASS AND COLLECTIVE ACTION SETTLEMENT, CERTIFICATION OF THE SETTLEMENT CLASS AND COLLECTIVE ACTION AND APPROVAL OF ATTORNEY'S FEES**

GRANOVSKY & SUNDARESH PLLC
Benjamin Rudolph Delson, Esq.
Alexander Granovsky, Esq.
48 Wall Street / New York, NY 10005
delson@g-s-law.com
ag@g-s-law.com
(646) 524-6001

Attorneys for Plaintiffs

# TABLE OF CONTENTS

*PRELIMINARY STATEMENT* ......................................................... *1*

*FACTUAL AND PROCEDURAL BACKGROUND* ...................................... *2*

   *I. The Court's Preliminary Approval Order, Notices and Claims* ........................... *2*

   *II. Results of the Notices* ................................................................. *2*

*SUMMARY OF THE SETTLEMENT TERMS* ........................................... *4*

*ARGUMENT* ............................................................................. *6*

   *I. Final Approval of the Settlement Is Appropriate* ................................... *6*

     *A.  The Class Settlement Is Fair, Reasonable and Adequate* .............................. *8*

     *B.  The FLSA Collective Action Settlement is Fair, Reasonable and Adequate* ........................................................................... *17*

     *C.  The Proposed Service Awards to the Named Plaintiffs Are Appropriate* ..... *18*

   *II. Final Certification of the Class is Appropriate* ................................... *19*

     *A.  Numerosity* ..................................................................... *19*

     *B.  Commonality* ................................................................... *20*

     *C.  Typicality* ....................................................................... *21*

     *D.  Adequacy of the Named Plaintiffs as Class Representatives* ...................... *22*

     *E.  Certification is Proper under Rule 23(b)(3)* ...................................... *22*

   *III. Class Counsel is Entitled to an Award of Fees and Costs* ............................... *24*

     *A.  The Terms in the Named Plaintiffs' Retainers, the Settlement Agreement and the Notices Entitle Class Counsel to One-Third of the Settlement Amount* ............................................................... *25*

     *B.  The Percentage of the Fund Method of Awarding Attorney's Fees is Appropriate* ..................................................................... *26*

     *C.  The Goldberger Factors Support the Requested Fee Award* ........................ *27*

     *D.  The Lodestar Cross-Check Further Supports the Requested Fee Award* ...... *34*

*CONCLUSION* ......................................................................... *36*

# TABLE OF AUTHORITIES

**CASES**

*Bautista v. ABC Corp.*, No. 19 CV 3963, 2021 U.S. Dist. LEXIS 62965
(S.D.N.Y. March 31, 2021)....................................................................36

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) .................34

*Buchanan v. Pay-O-Matic Check Cashing Corp.*, No. 18-CV-855, 2020
U.S. Dist. LEXIS 188658 (E.D.N.Y., Oct. 8, 2020), *adopted by* 2021
U.S. Dist. LEXIS 35030 ................................................... 16, 17, 20, 21

*Chang v. Philips Bryant Park LLC*, No. 17-cv-8816, 2020 U.S. Dist.
LEXIS 99985 (S.D.N.Y. June 5, 2020) ..................................................18

*Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164 (E.D.N.Y.
2012)........................................................................................................26

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)............. passim

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995)......19

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91
(2d Cir. 2007) ................................................................................... 22, 23

*Davenport v. Elite Model Mgmt. Corp.*, No. 1:13-cv-01061-AJN, 2014
U.S. Dist. LEXIS 205626 (S.D.N.Y. May 12, 2014)................................8

*DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 U.S. Dist.
LEXIS 65261 (S.D.N.Y. May 11, 2015)..................................................33

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006)....................22

*Faroque v. Park West Exec. Servs.*, No. 15 CV 6868, 2020 U.S. Dist.
LEXIS 15839 (E.D.N.Y., Jan. 29, 2020).................................................13

*Feliciano v. Metro. Transp. Auth.*, No. 18-CV-26, 2020 U.S. Dist.
LEXIS 80212 (S.D.N.Y. May 6, 2020).....................................................19

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005).............. 13, 20, 21, 24

*Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424 (S.D.N.Y. 2014) .......35

*Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982) ......................20

*Glatt v. Fox Searchlight Pictures, Inc.*, 811 F. 3d 528 (2nd Cir. 2016) ............. passim

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ................ 7, 27, 30, 35

*Hall v. Prosource Techs., LLC*, No, 14-CV-2502, 2016 U.S. Dist.
LEXIS 53791 (E.D.N.Y., April 11, 2016) ...............................................35

*Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91 (E.D.N.Y. 2015) ......................26, 34

*Hill v. City of Montgomery*, No. 14-cv-00933, 2021 U.S. Dist. LEXIS
103183 (N.D.N.Y., June 2, 2021)..............................................................7

*Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363 (S.D.N.Y. 2007) ................................................................................................ 23

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................................ 9, 10, 11, 13

*In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344 (S.D.N.Y. 2014) ................................................................................. 30, 31

*In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999) .......................... 26

*In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) ................................................................................................. 23

*Joel A. v. Guiliani*, 218 F.3d 132 (2d Cir. 2000) ............................................... 6

*Kirby v. FIC Rest., Inc.*, No, 19-CV-1306, 2020 U.S. Dist. LEXIS 178109 (N.D.N.Y., Sept. 28, 2020) ....................................................... 12

*Lizondro-Garcia v. Kefi LLC*, No. 12 Civ. 1906, 2014 U.S. Dist. LEXIS 143165 (S.D.N.Y. Oct. 7, 2014) ......................................... 19

*Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362 (S.D.N.Y. 2013) ................................................................................................. 12

*Marisol A. v. Guiliani*, 126 F.3d 372 (2d Cir. 1997) ........................................ 21

*Marriott v. County of Montgomery*, 227 F.R.D. 159 (N.D.N.Y. 2005) ........................ 23

*Massiah v. MetroPlus Health Plan*, Inc., No. 11-cv-5669, 2012 U.S. Dist. LEXIS 166383 (E.D.N.Y., Nov. 20, 2012) ..................................... 17

*Paguirigan v. Prompt Nursing Emp't Agency LLC*, No. 1:17-cv-01302-NG-CLP, 2022 U.S. Dist. LEXIS 186823 (E.D.N.Y. Apr. 7, 2022) ......................... 7

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986) ................................ 23

*Sukhnandan v. Royal Health Care of Long Island LLC*, No, 12-cv-4216, 2014 U.S. Dist. LEXIS 105596 (S.D.N.Y. July 31, 2014) ..................... 33

*Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007) .......................................................................... 32

*Tiro v. Public House Invs., LLC*, No. 11 Civ. 7679, 2013 U.S. Dist. LEXIS 129258 (S.D.N.Y. Sept. 10, 2013) ................................................ 29

*Torres v. Gristede's Operating Corp.*, No. 04-cv-3316, 2010 U.S. Dist. LEXIS 75362 (S.D.N.Y. June 1, 2010) ....................................................... 6

*Toure v. Cent. Parking Sys.*, No. 05-cv-5237, 2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sep. 28, 2007) ............................................................. 22

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ....... 6, 26, 27, 34

*Willix v. Healthfirst, Inc.*, No, 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102 (E.D.N.Y. Feb. 18, 2011) .......................................................... 10, 33

*Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y. 2008) ...................................... 10

**STATUTES**

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*................................................ passim

New York Labor Law, Art. 6, §§ 190 et. seq., and Art. 19, §§ 650 *et. seq*................................................................................................ passim

# PRELIMINARY STATEMENT

On February 7, 2023, the Court preliminarily approved a proposed settlement of this matter for $120,000 (the "Settlement Amount"), authorized issuance of notice of that proposed settlement, and conditionally certified a Rule 23 class action and Section 216(b) collective action for purposes of effecting the proposed settlement. *See* Dkt. No. 70 (the "Order"), attached as Exhibit C.[1]

The proposed settlement resolves all claims in the lawsuit, including (1) the claims, brought as a purported collective action under Section 216(b), for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), (2) the claims, brought as a purported class action under Rule 23, for violations of the New York Labor Law, Art. 6, §§ 190 et. seq., and Art. 19, §§ 650 *et. seq.* ("NYLL"), and (3) the claims brought individually under NYLL on behalf of Megan Piper Johnson, Rodenellie Pluvoise and Rebecca Pardue (the "Named Plaintiffs").

By this motion, Plaintiffs respectfully request that the Court: (1) grant final approval of the Settlement Agreement, attached as Exhibit A; (2) certify both a collective action under Section 216(b) of the FLSA, of all individuals who were Work-Studies at Defendant Body & Pole, Inc. ("B&P") at any time from February 1, 2019 through February 7, 2023 (the "Collective Action") and a settlement class consisting of all individuals who were Work-Studies at B&P at any time from February 1, 2016 through February 7, 2023 (the "Class Action"); (3) approve an award of attorney's fees in the amount of $36,000, (which is 30% of the gross Settlement Amount, or one-third

---

[1]     All Exhibits refer to the Exhibits to the Declaration of Benjamin Rudolph Delson, Esq. in Support of this Unopposed Motion for Final Approval of the Proposed Settlement, dated May 3, 2023 ("Delson Decl.").

of the Settlement Amount net of the administrator's fees); and (4) enter judgment dismissing this action with prejudice in accordance with the Settlement Agreement. A proposed order is attached as Exhibit H.

## **FACTUAL AND PROCEDURAL BACKGROUND**

### **I. The Court's Preliminary Approval Order, Notices and Claims**

The procedural and factual history of this litigation up to the Court's Preliminary Approval Order are detailed in the Memorandum in Support of the Unopposed Motion for Preliminary Approval of the Proposed Class and Collective Action Settlement, *see* Dkt. No. 68 ("Preliminary Approval Motion"), and summarized in the Delson Declaration at ¶¶ 5-24, 48-50.

On February 7, 2023, the Court preliminarily approved the Parties' proposed settlement, appointed Granovsky & Sundaresh PLLC as Class Counsel and the Named Plaintiffs as Class Representatives, provisionally certified the Class and Collective Action, approved notices both to the Class and Collective Action, and authorized the mailing of the notices. *See* Ex. C.

### **II. Results of the Notices**

Pursuant to the Order, Defendants produced a list of 114 individuals who worked as Work Studies at B&P between February 1, 2016 (when the proposed Class Period commenced) and May 31, 2022 (when Defendants ended their Work Study program). The list included names, last known telephone numbers and email addresses; Defendants had no records of mailing addresses or Social Security

numbers for the Work-Studies. Delson Decl. ¶ 53, and Ex. J, Declaration of Barry J. Peek, Esq., of Arden Claims Service LLC, at ¶5. [2]

Using that information, the Settlement Administrator, Arden Claims Service LLC, performed a skip trace, and was able to locate mailing addresses for 48 of the 114 individuals. Delson Decl. ¶ 54; Ex. J, ¶5.

On March 9, 2023 the Settlement Administrator mailed the notices approved by the Court to the 48 known mailing addresses, as well as to the 114 known email addresses. Delson Decl. ¶ 55; Ex. J, ¶6. The notice advised Class Members and Collective Action Plaintiffs of applicable deadlines and other events, including the Final Approval Hearing, how to participate in the Settlement, and how to obtain additional information regarding the case and settlement. Delson Decl. ¶¶ 56-57; Ex. J at Ex. 1 (example of the notices as mailed).

Of the 48 notices sent by U.S. Mail, 4 were returned as undeliverable. Of those, 3 were successfully forwarded in a second USPS mailing; a skip trace was performed, but no forwarding address was located for the fourth returned notice. Delson Decl. ¶ 58; Ex. J ¶7. Of the 114 notices sent by email, 5 were returned as undeliverable. Notices were then sent via text message to those 5 Class Members to whom email delivery had failed. Delson Decl. ¶ 59; Ex. J ¶8. In the end, whether via U.S. mail,

---

[2] Because the Defendants do not have complete addresses or Social Security information for the Work Studies, in the Proposed Order, see Exhibit H ¶ 15, Plaintiffs respectfully seek permission to communicate with Class Members to obtain such information, including by sending Forms W9 to Class Members as needed.

3

email or text, it appears that Notices have been delivered to every Class Member. Delson Decl. ¶ 60; Ex. J ¶9.

The response of the Class has been overwhelmingly positive. The deadline to opt out or object was April 24, 2023. As of that date, zero Class Members had opted out and zero had objected. Delson Decl. ¶ 61; Ex. J ¶¶10-11.

## SUMMARY OF THE SETTLEMENT TERMS

The terms of the Settlement Agreement, which were preliminarily approved by the Court on February 7, 2023, *see* Dkt. No. 70, are detailed in Plaintiffs' Preliminary Approval Motion, *see* Dkt. No. 68.

In summary, of the $120,000 Settlement Amount, a total of $69,000 is proposed to be distributed to the Class in settlement of all claims under NYLL and FLSA. A total of $3,000 is proposed to be distributed to the Named Plaintiffs in settlement of their individual claims and as a service award. $12,000 is proposed as payment of the Settlement Administrator's fees. $36,000, representing 30% of the gross Settlement Amount, or one-third of the Settlement Amount net of the Settlement Administrator's fees, is proposed as Class Counsel's fees. Delson Decl. ¶¶ 27-30, Ex. A at ¶¶ 3.1.

With respect to the $69,000 that is proposed to be distributed to the Class, each Class Member's individual award will be in proportion to the product of the total number of weeks that particular Class Member served as a Work Study at B&P, multiplied by the average minimum wage in New York City during those weeks. Delson Decl. ¶¶31-32, Ex. A at ¶ 3.1(A).

Defendants will fund the settlement over three years, and the Settlement Administrator will issue three rounds of checks to the Class. The parties have agreed that Defendant will fund the settlement on the first, second and third anniversaries of the Settlement Agreement, *i.e.* on November 1, 2023, November 1, 2024 and November 1, 2025 as reflected in the final Order approving settlement. *See* Ex. H ¶ 13.

Class Members will be paid in chronological order of their start dates, with Class Members who served as Work Studies in 2016 being paid in the first round of payments, and Class Members who served as Work Studies in 2022 not being paid until the third round of payments. The Work Studies who opted into the Collective Action and the Named Plaintiffs will be taken out of order, and paid in the first round of payments. Class Counsel and the Settlement Administrator will receive one-third of their proposed fee with each of the three rounds of payments. Delson Decl. ¶¶ 35-38, Ex. A at ¶ 3.1(E).

Payments to the class members range from less than $50 (for Class Members who were Work Studies for only a few weeks of the Class Period) to in excess of $1250 (for Class Members who were Work Studies for more than 18 months). Delson Decl. ¶ 32.

<u>**ARGUMENT**</u>

## I. Final Approval of the Settlement Is Appropriate

Because this lawsuit includes both the Class Action claims, brought under Rule 23, and the Collective Action claims, brought under Section 216(b) of the FLSA, any settlement must be approved by the Court.

With respect to the Rule 23 action, the law favors the settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). The approval of a proposed class action settlement is a matter of discretion for the trial court. *Joel A. v. Guiliani*, 218 F.3d 132, 139 (2d Cir. 2000). And, "[i]n exercising this discretion, courts should give proper deference to the private consensual decision of the parties." *Torres v. Gristede's Operating Corp.*, No. 04-cv-3316, 2010 U.S. Dist. LEXIS 75362, at *10 (S.D.N.Y. June 1, 2010) (citation and quotation omitted.) The settlement of class action lawsuits typically includes three distinct stages:

1. ***Preliminary Approval:*** The parties submit a proposed settlement to the Court in connection with a written motion for preliminary approval.

2. ***Notice:*** The parties mail notice of the proposed settlement to all affected Class Members; and

3. ***Final Settlement Approval Hearing:*** The Court holds a hearing at which Class Members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Cf.* Fed. R. Civ. P. 23(e); *Hill v. City of Montgomery*, No. 14-cv-00933, 2021 U.S. Dist. LEXIS 103183 at *2-3, (N.D.N.Y., June 2, 2021). Here, the Court has granted preliminary approval and notices have issued. With this motion, the Named Plaintiffs request that the Court grant final approval to the Settlement.

Rule 23(e) permits approval of a class action settlement "only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). "Traditionally, in determining whether a settlement is fair, reasonable, and adequate, courts in the Second Circuit reviewed the negotiating process leading up to the settlement for procedural fairness, to ensure that the settlement resulted from an arm's-length, good faith negotiation between experienced and skilled litigators [and] also evaluated the substantive fairness of the settlement." *Paguirigan v. Prompt Nursing Emp't Agency LLC*, No. 1:17-cv-01302-NG-CLP, 2022 U.S. Dist. LEXIS 186823, at *14-16 (E.D.N.Y. Apr. 7, 2022) (citations and quotations omitted). The analysis of substantive fairness traditionally included considering the so-called *Grinnell* factors originally laid out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

In 2018, Federal Rule of Civil Procedure 23 was amended to set forth specific factors relating to the court's approval of a class settlement. "The goal of the amendment was not to displace any factor developed in any circuit, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision." *Paguirigan*, 2022 U.S. Dist. LEXIS 186823, at *15-16 (cleaned up). "District courts in this circuit, accordingly, have considered the *Grinnell* factors

in tandem with the factors set forth in Rule 23(e)(2), and the Second Circuit has continued to endorse the use of the *Grinnell* factors following the 2018 amendment." *Id.* (citations and quotations omitted).

The FLSA claims settled by this action are brought as a collective action under §216(b) of the FLSA and not as a class action under Rule 23. However, "[t]he standard for approving an FLSA settlement is significantly lower than for a Rule 23 settlement," *Davenport v. Elite Model Mgmt. Corp.,* No. 1:13-cv-01061-AJN, 2014 U.S. Dist. LEXIS 205626, at *23 (S.D.N.Y. May 12, 2014), so satisfaction of the *Grinnell* factor analysis will satisfy the standards of approval of the FLSA settlement.

## A. The Class Settlement Is Fair, Reasonable and Adequate

The nine *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. Here, all nine *Grinnell* factors weigh in favor of granting final approval of the Settlement Agreement.

### 1.  Litigation Will be Costly and Long  (*Grinnell* Factor 1)

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

Here, further litigation would necessarily result in significant further expenses and further delays.  If this matter were to proceed, the parties would likely invest heavily in developing evidence for and briefing summary judgment motions, seeking to prevail on the question of whether the Work-Study Program was or was not a valid unpaid internship or vocational training program under *Glatt* and its progeny. Because that question would be dispositive, appeals to the Second Circuit would be likely, no matter the outcome.  If summary judgment were denied to both parties and the matter were to proceed to trial, a jury would be required to decide, under *Glatt,* the question of who was the primary beneficiary of this Work-Study relationship, the Work-Study, or Body & Pole?   Such a trial would require the jury to hear testimony from perhaps a dozen Work-Studies on the nature of the Work-Study Program, as well as B&P customers and employees, and would likely consume at least a full week of the Court's time. Therefore, the first *Grinnell* factor weighs in favor of final approval.

### 2.  The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

The response to the notices has been overwhelmingly positive.  Delson Decl. ¶ 61.  No Class Members have opted out and none have submitted an objection to the settlement.  *Id.*

"The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out); see also *Willix v. Healthfirst, Inc.*, No, 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102, at *10 (E.D.N.Y. Feb. 18, 2011) (approving settlement where 7 of 2,025 class members submitted timely objections and 2 requested exclusion). This factor weighs in favor of final approval.

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

There is no threshold discovery must reach in order to satisfy this inquiry. "[I]t is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make an appraisal" of the settlement. *In re Austrian*, 80 F. Supp. 2d at 176 (cleaned up). "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement, but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *Id.* (cleaned up).

The parties' discovery here meets this standard. Here, Plaintiffs' counsel conducted interviews with about twenty-five former Work-Studies—more than one-fifth of the Class, Delson Decl. ¶12—gathering a robust understanding of what the Plaintiffs would be able to prove about Defendants' Work-Study Program at trial. Plaintiffs' counsel also obtained, during settlement discussions, records both of the Work-Studies' tenures, and of Defendants' financial position, allowing Plaintiff's counsel to accurately estimate Defendants' maximum liability, and to reach

meaningful conclusions about Defendants' inability to withstand a greater judgment. Delson Decl. ¶¶17-18.

Indeed, it was at least in part the prospect of further discovery and litigation on this matter that compelled Defendants to retain bankruptcy counsel. At the time of settlement, Plaintiffs' counsel believed that further discovery would make settlement impossible, because the cost of litigation would render Defendants insolvent. Delson Decl. ¶23.

Therefore, the third *Grinnell* factor weighs in favor of final approval.

### 4. Plaintiffs Would Face Real Risks If The Case Proceeded (*Grinnell* Factors 4 & 5)

In weighing the risks of establishing liability, class treatment, and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (citations and quotations omitted).

Plaintiffs are unaware of any published decision addressing the legality, under FLSA or NYLL, of a program truly analogous to Defendants' Work-Study Program. If this matter were to proceed to summary judgment, Plaintiffs would face a considerable risk of this Court or the Second Circuit ruling that the Work-Study Program was a valid unpaid internship or vocational training program under *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F. 3d 528 (2nd Cir. 2016) and its progeny. And, if the Work-Study Program is a valid unpaid internship or vocational training program, then Plaintiffs' damages would be $0.

The proposed settlement alleviates the uncertainty of litigation. The fourth and fifth *Grinnell* factors weigh heavily in favor of final approval.

### 5. Establishing a Class and Maintaining it Through Trial Would Not Be Simple (*Grinnell* Factor 6)

The risk of establishing and maintaining class certification through trial is also present. In particular, if this matter were not to settle, the Defendants would likely argue that changes in the Work-Study Program between 2016 and 2022 make class-treatment improper; Defendants would argue that every separate cohort of Work-Studies experienced different conditions, and need to be analyzed separately under *Glatt.* There is also a risk that, even if Plaintiff were successful in establishing collective and class certification, the Defendants would seek de-certification of the class. If Plaintiff ultimately were to prevail in avoiding de-certification, the Defendants would potentially seek permission to file an interlocutory appeal under Federal Rule of Civil Procedure 23(f).

Risk, expense, and delay are involved in each of these steps in the litigation. Settlement eliminates this risk, expense, and delay. The sixth *Grinnell* factor favors final approval.

### 6. Defendants Are Unlikely to Be Able to Withstand a Greater Judgment (*Grinnell* Factor 7)

"Case law recognizes that potential difficulty in collecting damages militates in favor of finding a settlement reasonable." *See Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013). *Cf. Kirby v. FIC Rest., Inc.*, No, 19-CV-1306, 2020 U.S. Dist. LEXIS 178109, at *9 (N.D.N.Y., Sept. 28, 2020) (weighing

pending bankruptcy proceedings); *Faroque v. Park West Exec. Servs.*, No. 15 CV 6868, 2020 U.S. Dist. LEXIS 15839, *14-15 (E.D.N.Y., Jan. 29, 2020) (weighing likelihood of Defendant taxi company failing due to competition from ride-sharing companies).

While Defendants' business did turn a profit in the best of times, Defendants' business, like many fitness businesses, suffered from COVID-era restrictions. Delson Decl. ¶23. During discovery and settlement talks alike, Defendants repeatedly represented that they were unable to afford the cost of defending this suit—much less the cost of any judgment—and indeed had retained bankruptcy counsel at the time that a settlement in principle was reached. Delson Decl. ¶23. Plaintiffs believe that, but for the instant settlement, Defendants would have filed for bankruptcy protection last year and the Class would have received no compensation whatsoever. Delson Decl. ¶24. The seventh *Grinnell* factor favors the granting of final approval.

### 7. The Settlement Amount is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 & 9)

The determination of whether a settlement amount is reasonable "does not involve use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognized the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Plaintiffs believe that the total unpaid wages in this matter are approximately $1.02 million; the actual amount that will be distributed to the Class—after anticipated service enhancements for the Named Plaintiffs, administrator's costs and attorneys fees—is $69,000. While the settlement represents a small fraction of Defendants' maximum liability, Class Members would recover even less if the Defendants sought bankruptcy protection. Similarly, in the event that Defendants were to prevail in litigation, Plaintiffs would likewise recover nothing. Under the Settlement, some Work Studies will receive payments of more than $1250. Delson Decl. ¶32.

Furthermore, pursuant to the settlement, Defendants have promised to permanently end the Work-Study Program and have issued a statement expressing appreciation for Work-Studies' contributions to Body & Pole and to the industry as a whole. Delson Decl. ¶42-44 and Ex. I. While of no monetary value, those promises are nonetheless meaningful to Plaintiffs, who brought this litigation in part to reform an entire industry that they claim often abuses interns—including by expecting interns to work without pay. In light of the risk of Defendants declaring bankruptcy or prevailing in litigation, and in light of non-monetary concessions by Defendants, we believe the settlement is on balance worthy of approval.

Accordingly, all of the *Grinnell* factors weigh in favor of issuing final approval of the settlement.

### 8. Approval is Appropriate Under Rule 23(e)(2)

All four Rule 23(e)(3) factors favor a finding that the relief provided for by the Settlement is adequate.

***Rule 23(e)(3) Factor 1 / Class Representatives and Class Counsel Adequately Represented the Class:*** The experience, qualifications and work of Class Counsel are discussed in detail in Section III below, and the adequacy of the Named Plaintiffs as Class Representatives is discussed in detail in Section II(D) below. We respectfully submit that Granovsky & Sundaresh and the Named Plaintiffs have zealously represented the Class.

***Rule 23(e)(3) Factor 2 / Settlement Negotiated At Arm's Length:*** Here, as discussed in the Preliminary Approval Motion, Dkt. No. 68, settlement was the result of months of adversarial discovery and months of settlement discussions. Both sides were represented by experienced, capable counsel.

***Rule 23(e)(3) Factor 3 / Settlement Grants Adequate Relief:*** As discussed above in connection with *Grinnell* factors 8 and 9, in the face of threatened insolvency, the Settlement provides some monetary relief to former Work Studies—as well as commitments from B&P to end its Work-Study program, and a published statement of appreciation for the efforts and contributions of the Work Studies. Rule 23(e)(2)(C) requires the Court to take four factors into account in determining if that Settlement provides adequate relief. Considering those four factors, the Settlement clearly does.

*(i): The costs, risks and delay of trial and appeal:* This factor overlaps with *Grinnell* factors 1, 4, 5 and 6. See *Buchanan v. Pay-O-Matic Check Cashing Corp.*, No. 18-CV-855, 2020 U.S. Dist. LEXIS 188658, at *19-*20 (E.D.N.Y., Oct. 8, 2020),

*adopted by* 2021 U.S. Dist. LEXIS 35030. As discussed above in connection with those *Grinnell* factors, there would be extensive costs, risks and delays of trial and appeal in the this case, which presents at least some novel issues under *Glatt* and its progeny. This factor favors the adequacy of the relief provided for by the Settlement.

*(ii): The effectiveness of how relief will be distributed to the class:* As discussed above, we believe the Settlement Administrator was able to contact 100% of the Class, and we expect that nearly an equal percentage will ultimately receive a settlement payment. This factor favors the adequacy of the relief provided for by the Settlement.

*(iii): Any proposed award of attorney's fees:* Consistent with the Settlement Agreement, Ex. A, ¶3.2, Class Counsel respectfully moves this Court to approve $36,000 in attorney's fees (30% of the gross Settlement Amount, or one third of the Settlement Amount net of the Settlement Administrator's fees). As discussed in Section III below, this is reasonable in light of the circumstances of this litigation.

*(iv): The terms of any Rule 23(e)(3) agreement:* Under Rule 23(e)(3), the Court must consider any agreement made in connection with the class settlement; here, that means that the Court must consider the proposed service awards to the Named Plaintiffs of $3,000. As discussed below, those proposed awards are appropriate. Notably, the notices sent to the class disclosed the details of those awards, and no Class Member objected. See Ex J. at Ex. 1 (the notice), at Section 7.

*Rule 23(e)(3) Factor* 4: *The Settlement is Equitable:* "Questions to consider under this factor 'could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether

the scope of the release may affect class members in different ways that bear on the apportionment of relief.'" *Buchanan*, 2020 U.S. Dist. LEXIS 188658, at *24 (quoting the 2018 Advisory Committee Notes to Fed. R. Civ. P. 23(e)(2)(D)).

Here, the Settlement amounts are as equitable as practicable: the Settlement contemplates a straightforward distribution of the settlement to all the Class Members in proportion to their hours worked and the minimum hourly wage in New York City at the time those hours were worked.

Because the Defendants were unable to finance the settlement immediately, the Settlement contemplates paying the Work-Studies in waves, with the Work-Studies who worked first in time being paid first in time—in an effort to provide speediest relief to the Class Members with the oldest claims. The Settlement also provides for paying the Named Plaintiffs, and the individuals who opted into the Collective Action, out of order, by including their payments in the first round of settlement checks. This, however, is equitable, as it rewards the individuals who took the risk of coming forward, and who took the time to assist Class Counsel in litigation, with more immediate payment.

### B. The FLSA Collective Action Settlement is Fair, Reasonable and Adequate

Because "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," *Massiah v. MetroPlus Health Plan*, Inc., No. 11-cv-5669, 2012 U.S. Dist. LEXIS 166383, at *13 (E.D.N.Y., Nov. 20, 2012), satisfaction of the *Grinnell* factor analysis above will largely satisfy the standards of approval of the FLSA settlement. Here, as with the Rule 23 settlement, the settlement of the FLSA claims

is the result of arm's length negotiations without fraud or collusion.  The settlement of the FLSA claims avoids litigation burdens and risks—including the burden and risk of resolving an arguably novel issue under *Glatt* and its progeny.  The FLSA Settlement secures some recovery for the members of the Collective Action even in the face of Defendants' threatened bankruptcy.  The settlement of the FLSA claims is therefore fair, reasonable and adequate.  *Cf.  Wolinsky v. Scholastic Inc.,* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (listing factors to be considered in approving FLSA settlements.)

### C. The Proposed Service Awards to the Named Plaintiffs Are Appropriate

The Settlement provides for the three Named Plaintiffs to receive supplemental payments of $1000 each.  Ex. A at §3.1(B).  These payments are appropriate for two reasons.  First, the Complaint asserts claims individually on behalf of the three Named Plaintiffs: claims under NYLL for wage notice and wage statement violations. Ex. 5 at ¶¶ 122-25.  Consequently, under the Settlement, the Named Plaintiffs have signed general releases.  Ex. A at §4.1(D).  In the context of the settlement of a wage-and-hour class action, additional payments to the Class Representatives are appropriate when those Class Representatives have signed general releases, as opposed to merely releasing their wage-and-hour claims.  *See, e.g., Chang v. Philips Bryant Park LLC*, No. 17-cv-8816, 2020 U.S. Dist. LEXIS 99985, at *7-8 (S.D.N.Y. June 5, 2020) (Swain, J) (approving $20,000 payment to named plaintiff in consideration of general waiver).  Second, the Named Plaintiffs have been very active in this litigation and in the negotiation of this settlement, investing considerable time

and emotional energy to vindicate the rights of the Work Studies. Delson Decl. ¶ 6. Courts in this Circuit regularly approve "service awards" for plaintiffs who provide those services to a class of fellow plaintiffs, and awards of $1000 well in line with the standards of this Circuit. *See, e.g.*, *Feliciano v. Metro. Transp. Auth.*, No. 18-CV-26, 2020 U.S. Dist. LEXIS 80212, at *8 (S.D.N.Y. May 6, 2020) (collecting cases, and approving service awards of $15,000 to each of five named plaintiffs); *Chang*, 2020 U.S. Dist. LEXIS 99985, at *7-8 (approving $1000 service awards)

## II. Final Certification of the Class is Appropriate

In its February 7 Order, the Court provisionally certified the Class for purposes of notice and settlement. The Court should now grant final certification of that Class, because no facts have evolved to indicate that the preliminary determination to certify a settlement class was incorrect, *Lizondro-Garcia v. Kefi LLC*, No. 12 Civ. 1906, 2014 U.S. Dist. LEXIS 143165, at *8 (S.D.N.Y. Oct. 7, 2014), and because the Class continues to satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality and adequacy, and Rule 23(b)(3)'s requirements of predominance and superiority.

### A. Numerosity

The Class satisfies the numerosity requirement because there are more than one hundred Class Members. *See* Delson Decl. ¶53. "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

## B. Commonality

The commonality requirement (like the typicality requirement) asks "'whether the named plaintiff's claim and the class claims are so interrelated that the interest of the class members will be fairly and adequately protected in their absence.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005) (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). The claims of the named plaintiff and the class need not be identical, but they must share "a common nucleus of operative facts or an issue that affects all members of the class." *Buchanan*, 2020 U.S. Dist. LEXIS 188658, at *8 (citation omitted).

Here, the NYLL claims of the Named Plaintiffs and of the members of the Class are, in fact, nearly identical. The Named Plaintiffs and the members of the Class allegedly worked the same schedule (two approximately 7-hour shifts per week) for the same employer (the Defendants) at the same location (B&P's Manhattan studio) under the same conditions (as Work-Studies who were compensated not in wages but, rather, with free access to Defendants' classes and services, among other non-monetary benefits). *See* Ex. B, the Complaint, ¶69-86. In pursuing claims for unpaid wages under NYLL, the Named Plaintiffs and the members of the Class all confront the identical legal question: Whether the Work-Study program was or was not a valid unpaid internship or vocational training program under *Glatt* and its progeny. Because of the extensive common factual and legal issues shared by the Named Plaintiffs and the Class members, the Class members' interests will be fairly and adequately protected, and the commonality requirement is met. *See Frank*, 228 F.R.D. at 182 (finding, on motion for preliminary approval, that class members

20

satisfied the commonality requirement where all class members allege that defendant violated identical wage and hour law); *Buchanan*, 2020 U.S. Dist. LEXIS 188658, *8-9 (same).

### C. Typicality

Rule 23 requires that the claims of the representative party be typical of the claims of the class and subclass. "[T]ypicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Guiliani*, 126 F.3d 372, 376 (2d Cir. 1997) (citations omitted).

Again, the NYLL claims of the Named Plaintiffs and of the members of the Class are nearly identical. The Named Plaintiffs and the members of the Class allegedly worked the same schedule for the same employer at the same location under the same conditions. *See* Ex. B, the Complaint, ¶¶ 69-86. The Named Plaintiffs and the members of the Class all confront the identical legal question: Whether the Work-Study program was or was not a valid unpaid internship or vocational training program under *Glatt* and its progeny. Therefore, the typicality requirement is met. *See Frank*, 228 F.R.D. at 182 (finding, on motion for preliminary approval, that class members satisfied the typicality requirement where all class members allege that defendant violated identical wage and hour law); *Buchanan*, 2020 U.S. Dist. LEXIS 188658, *9-10 (same).

## D. Adequacy of the Named Plaintiffs as Class Representatives

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (citation and quotation omitted). The central inquiry is whether the class representative will have the "incentive to maximize the recovery of all class members." *Toure v. Cent. Parking Sys.*, No. 05-cv-5237, 2007 U.S. Dist. LEXIS 74056, at *18-19 (S.D.N.Y. Sep. 28, 2007) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).  Id.

The experience and qualifications of the Class Counsel are discussed below in Section III.  As to the Named Plaintiffs, they have no interests that are antagonistic to or at odds with the Class Members, and except for the modest service awards proposed by the Settlement Agreement, the Named Plaintiffs will participate in the settlement on the same terms as every other member of the Class.  Indeed, the Named Plaintiffs were actively engaged with the Class, recruiting nearly 20% of the possible members of the Class to opt in to the FLSA Collective Action long before this settlement was being negotiated.

## E.  Certification is Proper under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact not only be present, but also that they "predominate over any questions affecting only individual members

and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The fact that a class representative meets the criteria of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

### 1. Common Questions Predominate

To establish predominance, Plaintiff must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, … predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007) (cleaned up). Predominance exists where "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Marriott v. County of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005) (quoting *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001)).

Here, liability can be determined on a class-wide basis because the central factual issues are all subject to generalized proof: The Named Plaintiffs and the members of the Class allegedly worked the same schedule for the same employer at the same location under the same conditions. *See* Ex. B, the Complaint, ¶¶69-86. The Named Plaintiffs and the members of the Class all confront the identical legal question: Whether the Work-Study program was or was not a valid unpaid internship or vocational training program under *Glatt* and its progeny. *See Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (the issue of whether

employees are supposed to be paid wages is "about the most perfect" question for class treatment).

### 2. A Class Action is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis asks whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." Rule 23(b)(3) includes a non-exclusive list of factors for the Court to consider in making that determination, including: whether individual class members wish to control individual actions; have already brought individual actions; the desirability of concentrating the litigation of the claims in the particular forum; and the manageability of the class.

Here, all considerations favor class treatment. The Class Members were aspiring dancers and performers working in New York City without wages, and so many likely lack the resources to prosecute individual actions. Plaintiff is unaware of any pending individual lawsuits filed by the Class Members arising from the same allegations. Regarding the forum, all of the allegedly wrongful conduct occurred in Manhattan. Because the parties seek certification in the context of a settlement, the manageability factor is not relevant. *See Frank*, 228 F.R.D. at 183 (manageability is "not a concern where the court is considering only settlement").

### III. Class Counsel is Entitled to an Award of Fees and Costs

Class Counsel respectfully moves the Court for an award of attorneys' fees in the total amount of $36,000, which is 30% of the gross Settlement amount, or one-third of the Settlement Amount net of Administrator's fees. As of when we began

writing this brief, Class Counsel has spent approximately 170.1 attorney hours investigating, litigating, and settling this litigation. *See* Delson Decl. at ¶73 & Ex. G (contemporaneous time records through Feb. 28, 2023). If those hours were multiplied by the hourly rate of each attorney who worked on this matter for Class Counsel, the implied lodestar amount would be approximately $66,973.50. *Id.* ¶ 74. The fact that the proposed fee award of $36,000 is significantly *less* than the implied lodestar amount is strong evidence of the reasonableness of the proposed attorney's fees.

Class Counsel's efforts over the past fifteen months have been without compensation, and our entitlement to payment has been wholly contingent upon the results received. *See* Delson Decl. at ¶ 70 & Exs. D, E & F (the Named Plaintiffs' engagement letters). For the reasons set forth below, Class Counsel respectfully submits that the attorneys' fees requested are fair and reasonable under the applicable legal standards and should be awarded in light of the contingency risk undertaken and the result achieved in this case.

### A. The Terms in the Named Plaintiffs' Retainers, the Settlement Agreement and the Notices Entitle Class Counsel to One-Third of the Settlement Amount

Each of the Named Plaintiffs retained Granovsky & Sundaresh on a contingency fee basis: Granovsky & Sundaresh would advance all costs and receive no compensation unless a recovery was obtained; the firm would then be entitled to reimbursement of its costs and to one-third of any recovery, net of those costs. Delson Decl. ¶70, and Exs. D, E & F.

The Settlement provides for Defendants to pay a gross Settlement Amount of $120,000, of which 30.0%, or $36,000, is designated as attorney's fees. Ex. A at § 3.2.

The notices sent to the Class informed the Class Members of these fees, *see* Ex. J at Ex. 1 (the notice) at Section 14, and none objected. (In connection with the Settlement, Granovsky & Sundaresh agreed to forego any reimbursement of its costs; aside from the costs of settlement administration, which are paid out of the settlement, our costs were modest. Delson Decl. ¶71 )

## B. The Percentage of the Fund Method of Awarding Attorney's Fees is Appropriate

Although there are two ways to compensate attorneys for successful prosecution of statutory claims, the lodestar method and the percentage-of-the-fund method, the trend in this Circuit has for years been to use the percentage-of-the-fund method. *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 102 (E.D.N.Y. 2015); *see also Wal-Mart Stores*, 396 F.3d at 121. There are several reasons that Second Circuit courts prefer the percentage method.

First, the percentage method "directly aligns the interests of the class and its counsel," *Wal-Mart Stores*, 396 F.3d at 121 (cleaned up), because it incentivizes attorneys both to work efficiently and to obtain the largest settlement feasible. The percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *see also Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 177 (E.D.N.Y. 2012) ("[T]he percentage method is intended to mirror the private marketplace where

contingent fee attorneys typically negotiate percentage fee arrangements with their clients.").

Second, the percentage method removes any motivation for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours, a known problem with the lodestar method. *See Wal-Mart Stores*, 396 F.3d at 121.

Third, the percentage method preserves court resources. The "primary source of dissatisfaction" with the lodestar method was that it "resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line item fee audits." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000) (citation omitted). While this Court should still use the lodestar method as a "cross check" for the reasonableness of our firm's fee request, it need not invest in the same exhaustive scrutiny that a full lodestar review requires. *Goldberger*, 209 F.3d at 50.

Fourth, the percentage method is "based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) (citation and internal quotation marks omitted). Unless the payment of attorney's fees is reimbursed from the fund as a whole, class members may pay nothing for the creation of the fund despite benefiting from its allocation.

### C. The Goldberger Factors Support the Requested Fee Award

District Courts should be guided by the so-called "*Goldberger* factors" in determining a reasonable common fund fee, including: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to

the settlement; and (6) public policy considerations. *Goldberger v. Integrated Res.*, 209 F.3d 43, 50 (2d Cir. 2000). Here, all the *Goldberger* factors weigh in favor of awarding Class Counsel their requested fees.

### 1. Class Counsel has expended significant time and effort on this case

Class Counsel invested heavily in this case, interviewing nearly one-fifth of the Class, reviewing documents and constructing analyses of damages, drafting pleadings and motions, and attending mediation and settlement conferences.

This case commenced on February 1, 2022. Delson Decl. ¶5, Dkt No. 1. The Complaint proposed to bring a Collective Action under Rule 216(b) of the FLSA, as well as a Class Action under Rule 23 of the Federal Rules of Civil Procedure alleging violations of NYLL, on behalf of all Work-Studies employed by Defendants in the three- and six-year periods prior to the filing of the Complaint. Delson Decl. ¶9 & Ex. B, ¶¶4-5.

Word of the lawsuit spread quickly among former Work-Studies, and in the late winter and early spring of 2022, Class Counsel devoted substantial time to interviewing former Work-Studies, and assisting those who wished to opt-in to become party plaintiffs; ultimately nineteen additional plaintiffs opted in. Delson Decl. ¶11, Dkt Nos. 8-11, 13-14, 18-26, 29-30, 34 and 37.

The Defendants answered on May 6, denying all liability, arguing that their Work-Study Program was a valid unpaid internship or vocational training program under *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F. 3d 528 (2nd Cir. 2016) and its progeny. Delson Decl. ¶16, Dkt No. 39.

The matter was referred to the SDNY Mediation Office for mediation, which was held before Mr. Roger Briton on May 31, but which did not result in settlement. Delson Decl. ¶¶17-19, Dkt No. 17, 35-36. Plaintiffs promptly moved for conditional certification and commenced discovery. Delson Decl. ¶¶ 20-21, Dkt No. 44-47, 52-53.

Settlement discussions continued in fits and starts through the summer, and the parties reached a settlement in principal on September 16. Delson Decl. ¶ 22.

In prosecuting and settling this case, Class Counsel expended approximately 170.1 hours of attorney time, resulting in a lodestar of $66,973.50. Delson Decl. at ¶¶73-74 and Ex. G. These hours are reasonable for a case like this one and were compiled from contemporaneous time records maintained by each attorney participating in the case. *See* Ex. G.

The requested fee is not based solely on time and effort already expended; it is also meant to compensate Class Counsel for time that will be spent administering the settlement in the future. *See Tiro v. Public House Invs., LLC*, No. 11 Civ. 7679, 2013 U.S. Dist. LEXIS 129258, at *38 (S.D.N.Y. Sept. 10, 2013) (fee award is also meant to compensate Class Counsel for future settlement administration). Administering class settlements of this nature and size requires a substantial, ongoing commitment— especially here, where settlement payments will stretch over three years. Class Counsel expect to respond to Class Member inquiries after final approval, especially after checks are issued to Class Members in 2023, 2024 and 2025. Delson Decl. at ¶ 75. As such, this factor weighs in favor of Class Counsel's requested award.

## 2. The large and complex nature of this litigation warrants the award of attorneys' fees being requested

This case involved over 120 Class Members and presented an apparently novel legal question under the FLSA and NYLL: Whether a work-exchange program like B&P's Work-Study program is, or is not, a valid unpaid internship or vocational training program under Glatt and its progeny. Neither party is aware of any published case discussing a work-exchange program on the scale of the one B&P implemented.

Although Class Counsel believes that Plaintiffs ultimately would have prevailed, Defendants would have strenuously fought to defeat liability. These factual disputes presented considerable risk and support approval of the requested fees. As such, this factor weighs in favor of Class Counsel's requested award.

## 3. Class Counsel took on a large amount of risk in prosecuting this case

Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award. *Grinnell*, 495 F.2d. at 470-71. "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." *Id.* at 470. "Risk should be considered 'as of when the case is filed.'" *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 351 (S.D.N.Y. 2014) (quoting *Goldberger*, 209 F.3d at 55).

Class and collective wage and hour cases of this type are by their nature complicated and time-consuming; representing 120 employees inevitably involves a tremendous investment of time, energy, and resources. Here, in litigating a Rule 23

action under an untested theory—that work-exchange programs like the Work-Study program violate the FLSA and NYLL—Class Counsel undertook an even larger risk, including the risk of loss on summary judgment or on appeal.

Furthermore, the Defendants faced real risks of insolvency; indeed, settlement was only achieved after Defendants had retained bankruptcy counsel. Delson Decl. at ¶23. Had one or more Defendants filed for bankruptcy, Class Counsel may have recovered nothing.

Finally, it is worth noting that while Class Counsel pride themselves on being tenacious litigators, they are ultimately a small firm of just six attorneys. Delson Decl. at ¶68. The Court should not discount the risks that small, plaintiff-side employment law firms take on in bringing class and collective actions. By granting Class Counsel's fee award, the Court can ensure that small firms like Class Counsel are incentivized to bring class or collective actions, as opposed to limiting their practice to small cases involving only individual claims.

This assumption of all of these risk supports the requested fee award. *See In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d at 351 (fact that "the law was unsettled on several issues relating to liability and/or damages" supported fee request).

### 4. Class Counsel's representation has been of the highest quality

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the

lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y. Jan. 31, 2007).

The recovery obtained in this action, while perhaps small in comparison to Defendants' maximum liability, was nevertheless substantial. Defendants have agreed to pay $120,000 to settle this litigation, a settlement amount so large relative to Defendants' resources that it took Defendants to the brink of insolvency. Delson Decl. at ¶23.

The quality of representation also supports Class Counsel's request. Benjamin Rudolph Delson, the attorney with principal responsibility for litigating this lawsuit, has been a member of the New York bar and a litigator since 2003 (as well a member of the Ohio bar since 2018 and of the California bar since 2021). Delson Decl. at ¶ 62.

He has focused exclusively on employment law since 2017, when he joined Granovsky & Sundaresh PLLC in an Of Counsel capacity, and has represented hundreds of individuals in discrimination, retaliation, wage and hour and other employment matters, including in both state and federal courts, as well as in various arbitration venues. For example, Mr. Delson was recently the lead attorney for the plaintiffs in *Chowdhury et al. v. Raja 786 Food Inc.,* No., 20-cv-04235 (E.D.N.Y.), where he represented a class of more than 700 current and former employees of six Domino's franchises in their wage-and-hour claims; Granovsky & Sundaresh was approved as Class Counsel in that matter, where in January of this year it achieved an $800,000 settlement under New York City's newly enacted Fair Workweek Law. Delson Decl. at ¶¶ 62-64.

Mr. Delson graduated Phi Beta Kappa from Stanford, Order of the Coif from N.Y.U. Law, and clerked for Judge James R. Browning of the Ninth Circuit Court of Appeals. He is trying his best to have a legal career in the trenches, fighting for workers. Delson Decl. at ¶ 65.

Alexander Granovsky has also been a member of the New York bar since 2003 and a member of the Ohio bar since 2015. In 2009 he co-founded Granovsky & Sundaresh PLLC, a law firm providing a full suite of employment law services, with a focus on vindicating the rights of employees. Delson Decl. at ¶ 66-67. Other than the *Chowdhury* matter, recent cases in New York in which Granovsky & Sundaresh has acted as lead counsel in Fair Labor Standards Act ("FLSA") collective action claims include: *Munoz et al v. ACA Contracting Inc. et al*, 2:19-cv-03824-JS-AKT; *Bumford et al v. Brooklyn Chrysler Jeep Dodge Ram et al*, 1:19-cv-04176-DLI-CLP; and *Barbato et al v. Knightsbridge Properties*, 2:14-cv-07043-JS-SIL. *Id.*

### 5. The requested fee is reasonable in relation to the settlement

Class Counsel's fee request, which equals 30% of the gross Settlement Fund, is entirely in line with what other courts have awarded as attorneys' fees in wage and hour cases. *See, e.g. DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 U.S. Dist. LEXIS 65261, at *13-15 (S.D.N.Y. May 11, 2015) (approving final settlement and attorneys' fee request of 33.3% of the settlement fund, as well as reasonable out of pocket costs); *Sukhnandan v. Royal Health Care of Long Island LLC*, No, 12-cv-4216, 2014 U.S. Dist. LEXIS 105596, at *46 (S.D.N.Y. July 31, 2014) (same); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 U.S. Dist. LEXIS 21102, at *15-19

(E.D.N.Y. Feb. 18, 2011) (same). Accordingly, this factor weighs in favor of approval of the requested fees.

### 6. Public policy weighs in favor of awarding attorneys' fees

Public policy favors awarding fees on a percentage-of-the-fund basis in wage-and-hour class action lawsuits. *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 102 (E.D.N.Y. 2015); see also *Wal-Mart Stores*, 396 F.3d at 121. "Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by private attorneys general," attorneys who fill that role "must be adequately compensated for their efforts." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013) (cleaned up).

It is a privilege to be able to represent clients who work in the arts and clients who don't have a lot of money—clients like many of the former Work-Studies. There is a reason why the attorneys who work for Granovsky & Sundaresh PLLC do what they do; vindicating the rights of workers, including through settlements such as this one, is why we joined the profession. Respectfully, by granting this fee award, the Court permits us to continue that work, work that both the federal and state legislatures deem vital, as reflected by the provisions in the FLSA and the NYLL for the award of reasonable attorneys fees to prevailing plaintiffs.

### D. The Lodestar Cross-Check Further Supports the Requested Fee Award

The trend in the Second Circuit, in considering fee awards in wage-and-hour settlements, has been to apply the percentage method and to then use the lodestar

method as a loose "cross check" for the reasonableness of the fees sought. *Goldberger*, 209 F.3d at 50.

To conduct this cross-check, a court asks what fees class counsel would receive under a lodestar method, and then asks what "multiplier" would need to be applied to the lodestar number to obtain the fees requested under the percentage method. Courts regularly find that, if the multiplier is equal to 2 or less, that confirms the reasonableness of fee awards. *See Hall v. Prosource Techs., LLC*, No, 14-CV-2502, 2016 U.S. Dist. LEXIS 53791, *53-54 (E.D.N.Y., April 11, 2016) (multiplier of 2.08 reasonable in FLSA matter); *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) (surveying cases and noting "In this Court's opinion, a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases.")

In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Id*.

Conducting the lodestar cross-check in this case confirms the reasonableness of the fee request; the final multiplier is far less than 2.0.

Contemporaneous time records for our firm's time are attached as Exhibit G. As of February 28, 2023, before we began drafting the instant motion, Benjamin Rudolph Delson, the attorney with principal responsibility for litigating this matter for Plaintiffs, had spent of 153.6 hours in this matter, and Alexander Granovsky, the

founder of our firm, had spent a further 16.5. Granovsky & Sundaresh regularly charges hourly clients $400 per hour for Mr. Delson's time on non-emergency matters, a rate our firm regularly discounts to $385/hr. for large matters such as this one. Mr. Granovsky's standard rate is $475/hr. Under a lodestar calculation, this would yield total attorney's fees of $66,973.50. Delson Decl. ¶ 74. The total fee award proposed by the Settlement, $36,000, is less than that lodestar amount, implying a multiplier of less than 1.0.

This Court recently found that an hourly rate of between $300 and $400 per hour is reasonable for a experienced attorneys litigating employment matters in this district. *See Bautista v. ABC Corp.,* No. 19 CV 3963, 2021 U.S. Dist. LEXIS 62965, at *20-21 (S.D.N.Y. March 31, 2021) (Swain, J). Even if Mr. Delson's and Mr. Granovsky's time were discounted to the bottom end of that range (and $300 per hour is less than our firm charges any hourly client for Mr. Delson's and Mr. Granovsky's time), under a lodestar calculation the total attorneys fees in this case would still come to $51,030, which still yields a multiplier of less than 1.0.

We therefore respectfully request that the Court approve a fee award to Class Counsel of $36,000, as contemplated by the Settlement.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request (and Defendants do not oppose) that the Court grant the Motion for Final Approval of Class and Collective Action Settlement and enter the Proposed Order. A proposed order is attached as Exhibit H.

Dated:      New York, New York
            May 3,  2023

                                    Respectfully Submitted,

                                    GRANOVSKY & SUNDARESH PLLC

                                    */s/ Benjamin Rudolph Delson*
                                    Benjamin Rudolph Delson
                                    Alexander Granovsky
                                    48 Wall Street
                                    New York, NY 10005
                                    delson@g-s-law.com / ag@g-s-law.com
                                    (646) 524-6001
                                    *Attorneys for Plaintiffs*