UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEGHAN PIPER JOHNSON, REBECCA PARDUE and RODENELLIE PLUVIOSE, on behalf of themselves and all other persons similarly situated, | Case No. 22-CV-00857 |
| *Plaintiffs,* | Judge Laura Taylor Swain |
| v. | |
| BODY & POLE, INC. and KYRA JOHANNESEN, | |
| *Defendants.* | |

**DECLARATION OF BENJAMIN RUDOLPH DELSON
IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF THE PROPOSED CLASS AND COLLECTIVE ACTION
SETTLEMENT, CERTIFICATION OF THE SETTLEMENT CLASS AND
COLLECTIVE ACTION AND APPROVAL OF ATTORNEY'S FEES**

I, Benjamin Rudolph Delson, declare as follows:

1.  I am an attorney admitted to the practice of law in New York, California and Ohio, as well as before this Court. I am of counsel to Granovsky & Sundaresh PLLC, counsel for the Plaintiffs in this action, *Meghan Piper Johnson et al. v. Body & Pole, Inc. et al.*, No. 22-CV-00857.

2.  Together with Alexander Granovsky, a founding partner of Granovsky & Sundaresh PLLC, I am the lawyer with principal responsibility for representing the Plaintiffs in this action.

3.  This declaration is based upon my personal knowledge and my work representing the Plaintiffs in this matter.

4. I submit this declaration in support of Plaintiffs' unopposed Motion for Final Approval of the Proposed Class and Collective Action Settlement, Certification of the Settlement Class and Collective Action and Approval of Attorney's Fees. The Proposed Settlement is attached as **<u>Exhibit A</u>**.

## Summary of Litigation

5. Plaintiffs Meghan Piper Johnson, Rebecca Pardue and Rodenellie Pluviose (the "Named Plaintiffs") commenced this matter on February 1, 2022 with the filing of the Complaint, which is attached as **<u>Exhibit B</u>**. Docket #1.

6. Granovsky & Sundaresh PLLC represented the Plaintiffs, with myself, Benjamin Rudolph Delson, as lead counsel. From the very outset, the Named Plaintiffs were active and eager participants in this litigation, investing considerable time and emotional energy to vindicate the rights of their former colleagues.

7. The Complaint named as Defendants Body & Pole, Inc. ("Body & Pole"), and its owner, Kyra Johannesen (together, "Defendants").

8. The gravamen of the Complaint was that all three Named Plaintiffs had served as "Work-Studies" at Body & Pole, which operates a dance studio in Manhattan. The Complaint alleged that, during their tenure as Work-Studies, the Named Plaintiffs had performed approximately 15 hours per week of work for Defendants, for which they had received no wages. The Complaint alleged that this arrangement violated both the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

9. The Complaint proposed to bring a Collective Action under Rule 216(b) of the FLSA, on behalf of all Work-Studies employed by Defendants in the three years prior

2

to the filing of the Complaint, as well as a Class Action under Rule 23 of the Federal Rules of Civil Procedure alleging violations of NYLL, on behalf of all Work-Studies employed by Defendants in the six years prior to the filing of the Complaint.

10. The case was initially assigned to Judge Vernon S. Broderick.

11. Immediately after the filing of the Complaint, word spread about this lawsuit among the current and former Work-Studies at Body & Pole, many of whom began contacting counsel for the Plaintiffs seeking to join the lawsuit. Between February and April 2022, nineteen former Work-Studies submitted consents to become party plaintiffs in this matter (the "Opt-Ins"). See Docket #8-11, #13-14, #18-26, #29-30, #34 and #37.

12. Plaintiffs' counsel conducted interviews with about twenty-five former Work-Studies—more than one-fifth of the Class—gathering a robust understanding of what the Plaintiffs would be able to prove about Defendants' Work-Study Program at trial.

13. On February 9, the Defendants waived service, and on February 24, the law firm Weinstein & Klein P.C. appeared for Defendants. Docket #12, #15-16.

14. On April 6, the Defendants retained new counsel, substituting the law firm of Golenbock Eiseman Assor Bell & Peskoe for Weinstein & Klein P.C. Docket #31-32.

15. On April 19, the Defendants publicly announced that they had decided to end their Work-Study program in June 2022.

16. In May 6, 2022, the Defendants answered, denying all liability, and asserting that the Work-Study program was a valid internship or vocational training program under both the FLSA and NYLL. Docket #39.

17. The matter was referred to the SDNY Mediation Office for mediation. Docket #17. In anticipation of mediation the parties entered into a confidentiality stipulation, Docket #35-36, and the Defendants produced extensive financial disclosures, including complete individual and corporate tax returns dating back six years.

18. Plaintiffs' counsel also obtained records of the Work-Studies' tenures, allowing Plaintiff's counsel to accurately estimate Defendants' maximum liability, and to reach meaningful conclusions about Defendants' ability to withstand a greater judgment.

19. Mediation was held before Mr. Roger Briton on May 31, but did not result in settlement.

20. On May 31, after mediation failed to produce a settlement, the Plaintiffs moved for conditional certification of a collective action under the FLSA. Docket #44-47.

21. In June, the parties met and conferred, and agreed to a case management plan. The Defendants agreed to stipulate to conditional certification of the FLSA collective action. Docket #52-53.

22. Settlement discussions continued in fits and starts through the summer, and the parties reached a settlement in principal on September 16, 2022. Docket #62.

23. At the time of settlement, Defendants had retained bankruptcy counsel. While it did turn a profit in the best of times, Defendants' business, like many fitness businesses, suffered during COVID-era restrictions on in-person gatherings. During discovery and settlement talks alike, Defendants repeatedly represented that they were unable to afford the cost of defending this suit, much less the cost of any

4

judgment if Plaintiffs' legal argument were to prevail.

24. Plaintiffs believe that, but for the instant settlement, Defendants would have filed for bankruptcy protection last year and the Class would have received no compensation whatsoever.

**The Settlement & Preliminary Approval**

25. The proposed Settlement Agreement is attached as **Exhibit A**. In summary, the proposed terms are as follows:

26. *Eligibility:* All individuals who worked as Work-Studies for the Defendants from February 1, 2016 to the present (the "Class Members") will be eligible to participate in the settlement. Ex. A, ¶¶ 1.4, 3.1.

27. *Settlement Amount:* The settlement provides for the Defendants to pay a total gross settlement amount of one hundred twenty thousand dollars ($120,000.00) (the "Gross Settlement Amount") to settle this action.

28. Defendants will fund the settlement over 3 years, making three payments of $40,000. Ex. A, ¶ 3.1(D).

29. The first $12,000 in costs of administering the settlement will be paid out of the Gross Settlement Amount (with any additional costs borne by Defendants), leaving a Net Settlement Amount of $108,000. Two-thirds of that Net Settlement Amount (or $72,000) will be distributed to the plaintiffs; one-third (or $36,000) is allocated as Plaintiffs' attorneys fees. Ex. A, ¶¶ 1.27, 3.1-3.3.

30. The settlement anticipates service awards totaling $3000 to the three named Plaintiffs (or $1000 for each Named Plaintiff), Ex. A, ¶ 3.1(B), leaving $69,000 to be

distributed to the Class as a whole.

31. Each Class Member's individual award will be in proportion to the product of (i) the total number of weeks that particular Class Member served as a Work Study at B&P, multiplied by (ii) the average minimum wage in New York City during those weeks. Ex. A, ¶ 3.1(A).

32. Plaintiffs anticipate that the settlement will compensate Class Members at a rate of roughly $9 per week worked for weeks worked in 2016 (when the New York City minimum wage was $9/hour), rising to roughly $15 per week worked for weeks worked in 2022 (when the New York City minimum wage was $15 per hour). We estimate that some Work-Studies who worked for a small number of weeks will receive payments of less than $50 (pre-tax); others, who worked more than a year and a half, will receive payments in excess of $1250 (pre-tax).

33. By way of comparison, if Body & Pole had paid its Work-Studies the New York City minimum wage, a typical Work-Study would have been paid approximately $135 per week worked in 2016, and approximately $225 per week worked in 2022.

34. However, Plaintiffs believe that if this settlement were not agreed to, the Defendants would likely declare bankruptcy and the recovery for the Class Members would likely be even smaller.

35. ***Settlement Timing:*** The settlement contemplates three rounds of payments to Class Members who do not opt out. To reduce administrative costs, rather than sending three checks to each Class Member, the settlement contemplates sending one check to each Class Member, beginning with the Class Members whose tenure as

6

Work-Studies is most remote in time, and ending with Class Members whose tenure is most recent—while also prioritizing payments to the party plaintiffs. Ex. A, ¶ 3.1(E).

36. While the Settlement provides for Defendants to fund the Settlement, and for payments to be made as late as the first, second and third anniversaries of final approval of this Settlement by the Court, Ex. A, ¶ 3.1(D), the parties have agreed that Defendant will fund the settlement on the first, second and third anniversaries of the parties' Settlement Agreement, *i.e.* November 1, 2023, November 1, 2024 and November 1, 2025. The parties have requested the Court include those dates in its final Order approving settlement. *See* Ex. H ¶ 13.

37. In the first round of payments (in November 2023), full settlement payments will be sent to the three Named Plaintiffs, the nineteen Opt-Ins, and however many of the remaining Class Members can be paid in full with the the balance of that first $40,000 payment. In the second round (in November 2024), full settlement payments will be sent to as many of the remaining unpaid Class Members as can be paid in full with the second $40,000 payment. In the third round (in November 2025), full settlement payments will be sent to the remaining unpaid Class Members. Ex. A, ¶ 3.1(E).

38. As discussed below, the settlement anticipates that the cost of administering the settlement and Plaintiff's attorney's fees will be paid out of Settlement Fund. One third of the administrative costs and one third of the total approved attorney's fees will be paid with each of the three rounds of settlement payments. Ex. A, ¶ 3.1(E).

39. ***Releases:*** The settlement contemplates that the three Named Plaintiffs will release all claims against the Defendants. Ex. A, ¶ 4.1(D).

40. Any Class Member who does not opt out of the settlement will release all claims under NYLL against the Defendants, and any Class Member who endorses their settlement check will release all claims under the FLSA. Ex. A, ¶¶ 4.1(A) & (B).

41. The settlement provides that, in the event that the Defendants default in funding the Settlement Fund, any Class Member who has not received their settlement payment will not release any claims as against the Defendants. Ex. A, ¶¶ 4.1(I).

42. ***The Agreed Statement & the End of the Work-Study Program:*** In connection with the settlement, the Defendants issued a public statement attached as **Exhibit I**.

43. In that statement Defendants express remorse that "the Work Study program did not meet the expectations of some participants and that they feel it was in any way unlawful."

44. Defendants reaffirm Body & Pole's commitment to ending its Work Study program and pledge "we will no longer run such a program or anything like it in the foreseeable future."

45. ***Administration Costs & Attorney's Fees:*** Pursuant to the settlement, the costs of administrating the settlement will be paid out of the Settlement Fund, up to a total of $12,000. In the event that settlement administration costs more than $12,000, the Defendants will pay 100% of the excess administration costs. Ex. A, ¶

3.3.

46. The settlement proposes that the parties retain Arden Claims Service LLC, a well-established national claims administration company, as Settlement Administrator.

47. The settlement provides that Granovsky & Sundaresh PLLC may move this Court to approve its attorney's fees in an amount up to 33% of the net Settlement Fund (i.e. the Settlement Fund less settlement administration costs), or $36,000. Ex. A, ¶ 3.2.

48. On November 9, 2022, Plaintiffs filed an unopposed Motion for Preliminary Approval of the Settlement. Docket Nos. 66-69.

49. On January 20, 2023, this case was reassigned to Judge Laura Taylor Swain.

50. On February 7, 2023, the Court issued an Order granting preliminary approval to the Settlement (the "Preliminary Approval Order"). The Preliminary Approval Order is attached as **Exhibit C**. Docket #70.

## Notice to the Class

51. Pursuant to the Preliminary Approval Order, the parties have retained Arden Claims Service LLC (the "Settlement Administrator"), a nationally-recognized claims administrator based in Port Washington, N.Y., to administer the Settlement.

52. Attached **Exhibit J** is the affirmation of Barry J. Peek, Esq., of Arden Claims Service LLC, attesting to the Settlement Administrator's administration of the distribution of notices in this matter.

53. Pursuant to the Preliminary Approval Order, Defendants' produced a list, to

Class Counsel and the Settlement Administrator, of 114 individuals who worked as Work Studies at B&P between February 1, 2016 (when the proposed Class Period commenced) and May 31, 2022 (when Defendants ended their Work Study program). The list included names, last known telephone numbers and email addresses. *See* Ex. J ¶5. Defendants had no records of mailing addresses or Social Security numbers for the Work-Studies.

54. Using that information, at the direction of Class Counsel, on March 7 the Settlement Administrator performed a skip trace, and was able to located mailing addresses for 48 of the 114 individuals. *See* Ex. J ¶5.

55. On March 9, 2023 the Settlement Administrator mailed the notices approved by the Court to the 48 known mailing addresses, and emailed notices to the 114 known email addresses. *See* Ex. J ¶6.

56. Attached as **Exhibit 1 to Exhibit J** is a sample of the Notice Packet approved by the Court and prepared by the Settlement Administrator for distribution to the Class in this matter.

57. The notice advised Class Members and Collective Action Plaintiffs of applicable deadlines and other events, including the Final Approval Hearing, how to participate in the Settlement, and how to obtain additional information regarding the case and settlement. *See* Ex. J at Ex. 1.

58. Of the 48 notices sent by U.S. Mail, 4 were returned as undeliverable. Of those, 3 were successfully forwarded in a second USPS mailing; a skip trace was performed, but no forwarding address was located for the fourth returned notice . *See* Ex. J ¶7.

59. Of the 114 notices sent by email, 5 were returned as undeliverable. Notices were then sent via text message to those 5 Class Members to whom email delivery had failed. *See* Ex. J ¶8.

60. In the end, whether via U.S. mail, email or text, Notices appear to have been delivered to every Class Member. *See* Ex. J ¶9.

61. The response of the Class has been overwhelmingly positive. The deadline to opt out or object was April 24, 2023. As of that date, no Class Members had opted out and no Class Members had objected *See* Ex. J ¶¶ 10-11.

## Qualifications of Class Counsel

62. I have been a member of the New York bar and a litigator since 2003 (as well a member of the Ohio bar since 2018 and of the California bar since 2021).

63. I have focused exclusively on employment law since 2017, when I became Of Counsel to Granovsky & Sundaresh PLLC. I have represented hundreds of individuals in discrimination, retaliation, wage and hour and other employment matters, including in both state and federal courts, as well as in various arbitration venues.

64. For example, I was recently the lead attorney for the plaintiffs in *Chowdhury et al. v. Raja 786 Food Inc.,* No., 20-cv-04235 (E.D.N.Y.), where I represented a class of more than 700 current and former employees of six Domino's franchises in their wage-and-hour claims, including novel claims under New York City's Fair Workweek Act. Granovsky & Sundaresh was approved as Class Counsel in that matter, and in January of this year we achieved a settlement totaling $800,000.

11

65. I graduated Phi Beta Kappa from Stanford, Order of the Coif from N.Y.U. Law, and clerked for Judge James R. Browning of the Ninth Circuit Court of Appeals. I am trying my best to have a legal career in the trenches, fighting for workers.

66. My colleague Alexander Granovsky has also been a member of the New York bar since 2003 and a member of the Ohio bar since 2015.

67. In 2009 Mr. Granovsky co-founded Granovsky & Sundaresh PLLC, a law firm providing a full suite of employment law services, with a focus on vindicating the rights of employees.

68. While we pride ourselves on what we hope is our tenacity and intelligence, Granovsky & Sundaresh PLLC is a small firm of just six attorneys.

69. Other than the *Chowdhury* matter, recent cases in New York in which Granovsky & Sundaresh has acted as lead counsel in Fair Labor Standards Act collective action claims include: *Munoz et al v. ACA Contracting Inc. et al*, 2:19-cv-03824-JS-AKT; *Bumford et al v. Brooklyn Chrysler Jeep Dodge Ram et al*, 1:19-cv-04176-DLI-CLP; and *Barbato et al v. Knightsbridge Properties*, 2:14-cv-07043-JS-SIL. *Id.*

70. To date, our efforts in this matter have been without compensation. The Named Plaintiffs retained our firm on a contingency basis, with our firm advancing all costs of the suit. Under the terms of our engagement, Granovsky & Sundaresh is entitled to reimbursement of those advanced costs, plus one-third of any pre-trial recovery obtained (net of costs). Attached as **Exhibits D, E and F** are the engagement letters that the Named Plaintiffs entered into with our firm.

71. At the time of settlement, Granovsky & Sundaresh PLLC agreed to waive any claim for reimbursement of its advanced costs. (Given the relatively early moment in discovery when settlement was achieved, our only significant out-of-pocket cost in this suit was the $402.00 filing fee charged by SDNY.)

72. Attached as **Exhibit G** are contemporaneous time records of the hours that attorneys from Granovsky & Sundaresh PLLC have spent on this matter, from its inception through February 28, 2023, when we began drafting this motion.

73. As of February 28, 2023, before we began drafting the instant motion, I had spent of 153.6 hours in this matter, and Alexander Granovsky had spent a further 16.5. *See* Ex. G.

74. Granovsky & Sundaresh regularly charges hourly clients $400 per hour for my time on non-emergency matters, a rate the firm often discounts to $385/hr. for large matters such as this one. Mr. Granovsky's standard rate is $475/hr. Under a lodestar calculation, this would yield total attorney's fees of $66,973.50 ($385 x 153.6 + $475 x 16.5).

75. Class Counsel will continue to invest time and resources to oversee the settlement in the future. And overseeing class settlements of this nature and size requires a substantial, ongoing commitment—especially here, where settlement payments will stretch over three years. Class Counsel expects to invest considerable time responding to Class Member inquiries after final approval, including after checks are issued to Class Members in November 2023, 2024 and 2025.

76. A Proposed Order granting preliminary approval to the settlement is attached

as **Exhibit H**.

I declare under penalty of perjury, under 28 U.S.C.§1746, that the foregoing is true and correct.

Dated:	New York, New York
	May 3, 2023

Respectfully Submitted,

GRANOVSKY & SUNDARESH PLLC

/s/ Benjamin Rudolph Delson
Benjamin Rudolph Delson
48 Wall Street, 11th Floor
New York, NY 10005
delson@g-s-law.com
(646) 524-6001
*Attorneys for Plaintiffs*